Jewelean JACKSON, Ethylon Brown, William Brown, Brenda Doane, and David Williams, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and Richard W. Stanek, in his official capacity as Sheriff of Hennepin County, Defendants.

No. A08–397.

Supreme Court of Minnesota.

Aug. 13, 2009.

Amber M. Hawkins, Galen Robinson, Colleen Daly, Legal Aid Society of Minneapolis, Minneapolis, MN; and William H. Crowder, Vildan A. Teske, Kathleen Finnegan Lamey, Crowder Teske, PLLP, St. Paul, MN, for plaintiffs.

Melissa Briggs, Eric Halperin, Daniel Mosteller, The Center for Responsible Lending, Washington D.C., of counsel for plaintiffs.

Robert J. Pratte, Sonya Braunschweig, DLA Piper U.S. LLP, Minneapolis, MN, for defendant Mortgage Electronic Registration Systems, Inc.

Myron Orfield, Geneva Finn, University of Minnesota, Minneapolis, MN, for amici curiae Myron Orfield, Minneapolis Urban League, Jewish Community Action, and ACORN Housing Corporation.

Marc D. Simpson, David A. Applebaum, Leonard, Street and Deinard, Minneapolis, MN, for amici curiae American Land Title Association and Minnesota Land Title Association.

## OPINION

ANDERSON, PAUL H., Justice.

This case comes to us as a certified question from the United States District Court for the District of Minnesota. The reformulated question is:

> Where an entity, such as defendant [Mortgage Electronic Registration Systems, Inc.], serves as mortgagee of record as nominee for a lender and that lender's successors and assigns and there has been no assignment of the mortgage itself, is an assignment of the ownership of the underlying indebtedness for which the mortgage serves as security an assignment that must be recorded prior to the commencement of a mortgage foreclosure by advertisement under Minn.Stat. ch. 580?

Our answer to the federal district court's question turns on the legal question of what constitutes an assignment of a mortgage within the meaning of Minnesota's foreclosure by advertisement statutory scheme. We answer the certified question in the negative, holding that transfers of the underlying indebtedness do not have to be recorded to foreclosure a mortgage by

advertisement under Minn.Stat. §§ 580.02 and 580.04 (2006).

The facts of this case are for the most part undisputed. The four named plaintiffs are property owners whose property is in various stages of the mortgage foreclosure process. Each plaintiff's foreclosure was instituted on behalf of the defendant, Mortgage Electronic Registration Systems, Inc. (MERS).[1] The plaintiffs claim that MERS has failed to record assignments of their mortgages as required for foreclosure by advertisement under Minnesota Statutes §§ 580.02 and 580.04.

MERS is an electronic registration system that was created in the aftermath of the 1993 savings and loan crisis. MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located. MERS members pay subscriber fees to register on the MERS system, as well as other fees on each loan registered and each transaction conducted.

MERS was designed to improve the efficiency and profitability of the primary and secondary mortgage markets. The primary market in the home mortgage industry largely consists of mortgage loans made to consumers. The loans are evidenced by a promissory note and secured by a security instrument—typically a mortgage deed or deed of trust. The originating lender routinely sells the mortgage loans on the secondary market to investors such as the Federal National Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac). Selling the loans provides income for the originator to finance more loans. Once on the secondary market, the loans may be sold several times or bundled into mortgage-backed securities.

Traditionally, each mortgage loan transfer on the primary and secondary market included an assignment of the security instrument that could be recorded in the local land recording office where the real estate securing the mortgage loan is located. According to MERS, multiple assignments of the security instrument commonly caused confusion, delays, and chain-of-title problems. In an effort to streamline the assignment process, MERS essentially privatized part of the mortgage recording system. Participants in the mortgage industry can subscribe as members on the MERS system. A loan held by a member is registered in the MERS database. Once registered, MERS serves as the mortgagee of record for all loans in its system. More specifically, MERS is the nominal mortgagee for the lender and any successors and assigns. When the security instrument is recorded, the local land records list MERS as the mortgagee.

The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system "saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans."

---

**1.** Plaintiffs also named Richard W. Stanek, in his official capacity as Sheriff of Hennepin County, as a defendant. Because the Henne-pin County Sheriff takes no position in the case, the defendant will be referred to as MERS.

There is limited information in the record on the language used for transfers of loans within the MERS system. Publicly available documents, namely pooling and servicing agreements filed with the Securities and Exchange Commission, suggest that when loans are transferred between MERS members, an assignment of the promissory note is executed but an assignment of the security instrument is not—although the original security instrument is physically delivered along with the promissory note.[2]

A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system. If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office.

When documentation is necessary, such as for an assignment to a non-MERS member, MERS does not draft or execute the paperwork on behalf of its members. Rather, MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS. This procedure allows the member that owns the indebtedness to assign or foreclose the mortgage loan in the name of MERS, eliminating the need to either work through a third party or to execute an assignment of the security instrument from MERS back to the member.

When MERS began having mortgages recorded in its name as nominal mortgagee, questions arose in certain jurisdictions as to whether MERS had the authority to act on behalf of its members. *See, e.g., MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 828 N.Y.S.2d 266, 861 N.E.2d 81, 82–83 (2006). As a result of questions raised about the MERS system, the Minnesota Legislature passed an amendment to the Recording Act that expressly permits nominees to record "[a]n assignment, satisfaction, release, or power of attorney to foreclose." Act of Apr. 6, 2004, ch. 153, § 2, 2004 Minn. Laws 76, 76–77 (codified at Minn.Stat. § 507.413 (2008)). The amendment, frequently called "the MERS statute," went into effect on August 1, 2004. *Id.,* § 2, 2004 Minn. Laws at 76–77. The MERS statute provides that:

An assignment, satisfaction, release, or power of attorney to foreclose is entitled to be recorded in the office of the county recorder or filed with the registrar of titles and is sufficient to assign, satisfy, release, or authorize the foreclosure of a mortgage if:

(1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;

(2) a subsequent assignment, satisfaction, release of the mortgage, or power of attorney to foreclose the mortgage, is executed by the mortgagee or the third party, its successors or assigns; and

(3) the assignment, satisfaction, release, or power of attorney to foreclose is in recordable form.

Minn.Stat. § 507.413(a).

MERS asserts that it is currently the nominal mortgagee on approximately two-thirds of all "newly originated" residential

---

**2.** Several of the publically available pooling and servicing agreements were submitted as part of the record. *E.g.,* Credit Suisse First Boston Mortgage Securities Corp., *Pooling and Servicing Agreement,* at Art. II, § 2.01 (March 1, 2004), *available at* http://www.sec.gov/Archives/edgar/data/1285664/0001162318 04000252/m29216psalj.htm.

loans nationwide. There is evidence in the record which reflects that in 2006 MERS was the mortgagee of record in approximately 40% of the foreclosures processed in and around the Minneapolis/St. Paul metropolitan area. Michael Grover, *Fed-led research reveals need for better Twin Cities foreclosure data,* 4 Community Dividend (2006), http://www.minneapol is-fed.org/publications_papers/pub_display.cfm?id=2200.

MERS is the mortgagee of record for the named plaintiffs in this case. Each named plaintiff executed a promissory note in favor of the originating lender and a mortgage deed using the "Minnesota–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS" form. This mortgage deed form designates MERS as the mortgagee of record "acting solely as a nominee for Lender and Lender's successors and assigns." The form lists the original lender, secures performance to the lender, and grants MERS, solely as nominee, the power of sale. The form also contains language that reserves to the lender the power to protect, discharge, or invoke the power of sale.

After the plaintiffs defaulted on their loan payments, MERS instituted foreclosure by advertisement proceedings against the plaintiffs. The records at the local land recording offices and the notices of foreclosure sale all listed MERS as the mortgagee and contained no indication that an assignment of the mortgage had been made. Because no discovery has taken place, each named plaintiff in this case has been unable to obtain information about the current owner of his or her indebtedness. Because several of the original lenders for the named plaintiffs have gone out of business, plaintiffs surmise that their original lenders at some point sold their indebtedness to another party.

On behalf of themselves and those similarly situated, the named plaintiffs filed an action in Hennepin County District Court seeking to enjoin all pending and future non-judicial mortgage foreclosure sales in which MERS is the nominal mortgagee "until MERS [could] establish compliance with Minnesota law." Under Minnesota law, a foreclosure by advertisement—non-judicial mortgage foreclosure—is only valid if the party seeking to foreclose the mortgage meets certain statutory requirements. *Moore v. Carlson,* 112 Minn. 433, 434, 128 N.W. 578, 579 (1910). Section 580.02 states that the party seeking to foreclose by advertisement must meet the following requirements:

(1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage . . .

(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded. . . . [3]

(footnote added.)

Section 580.04 requires that the notice of foreclosure include "the name of the mortgagor, the mortgagee, each assignee of the

---

**3.** In 2008, the legislature added an additional prerequisite to foreclosure by advertisement, requiring that "before the notice of pendency as required under section 580.032 is recorded, the party has complied with section 580.021." Act of May 18, 2008, ch. 341, art. 5, § 7, 2008 Minn. Laws 1390, 1422 (codified at Minn.Stat. 580.02 (2008)). Section 580.021 requires the foreclosing party to give notice of the availability of counseling, and to provide the homeowner various contact information for counseling services. Minn.Stat. §§ 580.021 (2008).

mortgage, if any, and the original or maximum principal amount secured by the mortgage." Plaintiffs claim that because MERS has not recorded and given notice of the loan transfers made within the MERS system before foreclosing by advertisement, MERS is not in compliance with the requirements to record all assignments of the mortgage and to give notice of each assignee of the mortgage.

On February 1, 2008, MERS petitioned to remove this case to the United States District Court for the District of Minnesota, which court accepted jurisdiction. After removal, plaintiffs moved for a temporary restraining order, which the federal district court denied. In its decision denying the motion, the court distilled from our case law the principle that "the holder of legal title to a mortgage can exercise the mortgage's power of sale if that title appears of record." *Jackson v. Mortgage Elec. Registration Sys., Inc.*, No. 08–305, 2008 WL 413293, Order at 5–6 (D. Minn. filed Feb. 13, 2008). In light of this principle, and based on the language in the security instruments, the court concluded that the mortgage deeds signed by the plaintiffs included language that granted MERS legal title. *Id.* at 6–7 & n. 5. The court found no evidence MERS had assigned its legal title to the plaintiffs' mortgages. *Id.* As a result, the court concluded that it was unlikely that the plaintiffs would be able to prove that MERS had assigned title for purposes of chapter 580 of the Minnesota Statutes. *Id.*

After denying the temporary restraining order, the federal district court submitted a certified question to our court because the federal court concluded that this case presents a novel question of law that had not previously been considered by an appellate court in Minnesota. The federal court certified the following question:

When MERS serves as mortgagee of record as nominee for a lender and that lender's successors and assigns, and the original lender subsequently sells, assigns, or transfers its rights under the mortgage, has there been an assignment of the mortgage that must be recorded pursuant to Minn.Stat. § 580.02 (2006) before MERS can commence a foreclosure by advertisement?

We reformulated the question and accepted it in the following form:

Where an entity, such as defendant MERS, serves as mortgagee of record as nominee for a lender and that lender's successors and assigns and there has been no assignment of the mortgage itself, is an assignment of the ownership of the underlying indebtedness for which the mortgage serves as security an assignment that must be recorded prior to the commencement of a mortgage foreclosure by advertisement under Minn. Stat. ch. 580?

## I.

In analyzing the legal issue raised by the certified question, it is helpful to begin with a review of some of the longstanding principles of real property law that govern mortgages in Minnesota. Historically, promissory notes and security instruments have been treated as two distinct documents that are legally intertwined. A real property mortgage has "two things, the personal obligation and the interest in the realty securing that obligation." 4 George E. Osborne, American Law of Property § 16.107 (1952); *accord White v. Miller,* 52 Minn. 367, 372–73, 54 N.W. 736, 737 (1893). The debt obligation or promissory note is the principal part of a mortgage transaction. 4 American Law of Property § 16.107. "[T]he interest in the land" attaches to the debt obligation "in an extremely important, but

subsidiary, capacity." *Id.; e.g., White,* 52 Minn. at 372, 54 N.W. at 737 (explaining that the debt is the "principal thing" and that the mortgage deed, or security instrument, is an "incident of the debt").

■ Because the security instrument is incident to the debt—i.e., acts as security for the debt—we have long stated that the security instrument can have no separate or independent existence apart from the debt it secures. *E.g., McManaman v. Hinchley,* 82 Minn. 296, 298, 84 N.W. 1018, 1018 (1901). It is an oft-stated principle that the "mortgage," referring to the security instrument, is incident to the debt, such that a transfer of the debt carries the mortgage with it. *E.g., Hatlestad v. Mut. Trust Life Ins. Co.,* 197 Minn. 640, 647, 268 N.W. 665, 668 (1936); *Hayes v. Midland Credit Co.,* 173 Minn. 554, 556, 218 N.W. 106, 107 (1928).

MERS has developed a system of structuring mortgage transactions that presents a potential conflict with some of our traditional assumptions and principles governing real property law. By acting as the nominal mortgagee of record for its members, MERS has essentially separated the promissory note and the security instrument, allowing the debt to be transferred without an assignment of the security instrument. As a result, we must analyze how the MERS system fits into the framework of Minnesota's real property law, the foundation of which predates our achieving statehood in 1858.

■ The foreclosure by advertisement statutes at issue were originally enacted in 1849, the year when Minnesota became a territory. Chapter 63, §§ 41, 42, 1849 Laws of Minn. 139–40 (reprinting the Laws of Wisconsin, enacted to govern the territory of Minnesota by the United States Congress, *see* Act of March 3, 1849, ch. X, § 12, 1849 Laws of Minn. xxxv). The requirements of the statutes have changed very little over the past 160 years. *Compare id. with* Minn.Stat. §§ 580.02, 580.04 (2006).[4] Foreclosure by advertisement was developed as a non-judicial form of foreclosure designed "to avoid the delay and expense of judicial proceedings." *Soufal v. Griffith,* 159 Minn. 252, 256, 198 N.W. 807, 809 (1924). Because foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed. *Moore,* 112 Minn. at 434, 128 N.W. at 579. We require a foreclosing party to "show exact compliance" with the terms of the statutes. *Id.* If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void. *Id.*

MERS argues that the MERS statute provides it with authority to foreclose by advertisement because the statute allows a "mortgagee as nominee or agent" to record "[a]n assignment, satisfaction, release, or power of attorney to foreclose" on behalf of a "third party identified in the mortgage, and the third party's successors and assigns." Minn.Stat. § 507.413. In other words, the statute provides MERS with the authority to record assignments or power of attorney for foreclosure on behalf of its members.

■ By passing the MERS statute, the legislature appears to have given approval to MERS' operating system for purposes of recording. Nonetheless, the MERS statute is a recording statute, and we conclude that it does not change the requirements of the foreclosure by advertisement statute. First, nothing in the plain lan-

---

4. The 2008 amendment, discussed *supra* note 3, was the first addition to the foreclosure by advertisement requirements, codified in section 580.02, since enactment of the statute in 1849.

guage of section 507.413—the MERS statute—expresses a legislative intent to modify the requirements of foreclosure by advertisement. Second, the MERS statute is a recording act statute that serves a different purpose than the foreclosure by advertisement statutes. The Recording Act creates no obligations; rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title. *See Republic Nat'l Life Ins. Co. v. Marquette Bank & Trust Co. of Rochester,* 312 Minn. 162, 251 N.W.2d 120, 123 (1977).

▮ By contrast, the foreclosure by advertisement statutes prescribe mandatory requirements which must be met for a party to proceed under the statutes. *Moore,* 112 Minn. at 434, 128 N.W. at 579. The recording requirements placed on the foreclosing party are focused not just on subsequent purchasers, but are also intended to ensure the mortgagor has notice and the opportunity to redeem. *See id.* So while the MERS statute suggests legislative approval of MERS' practices, the statute does not resolve the question of whether MERS has complied with the foreclosure by advertisement requirements set out in chapter 580. Therefore, to answer the certified question we must analyze the foreclosure by advertisement statutes.

## II.

▮ Plaintiffs contend that MERS has not complied with the statutory requirements to record and give notice of mortgage assignments before foreclosure by advertisement because MERS has not recorded and given notice of the promissory note assignments between its members. *See* Minn.Stat. §§ 580.02, 580.04. Plaintiffs offer two main arguments for why the term "mortgage," as used to describe the recording and notice requirements in the foreclosure by advertisement statutes, applies to the promissory note assignments between MERS members. The arguments are: (a) the term mortgage as used in the statutes has historically been used to refer the security instrument and/or the promissory note; and (b) under longstanding principles of real property law, an assignment of the promissory note carries the security instrument with it and, thus, an assignment of the promissory note constitutes an assignment of the mortgage as a matter of law. We address each argument in turn.

### a. *Assignment of the Mortgage as used in the Foreclosure by Advertisement Statutes*

Plaintiffs' first argument is that the statutory language with respect to assignments of the mortgage, as that phrase is used in sections 580.02 and 580.04, includes not only transfers of the promissory note and security instrument together, but also includes transfers where the promissory note and security instrument are assigned separately. Plaintiffs give several examples which demonstrate that the term mortgage is often used indiscriminately—to refer to the security instrument, the underlying indebtedness, or the combination of the security instrument and the indebtedness. *See, e.g.,* William F. Walsh, *A Treatise on Mortgages* § 58 (1934); George E. Osborne, *Handbook on the Law of Mortgages* § 223 (2d ed.1970); *Black's Law Dictionary* 1031 (8th ed.2004).

The facts in this case suggest that when MERS members transfer their interest in a debt, an assignment of the promissory note is executed but an assignment of the security instrument is not executed. Therefore, the question before us is whether the provisions in sections 580.02 and 580.04, which require a mortgagee to rec-

ord and give notice of any assignment of the "mortgage" before foreclosing by advertisement, require MERS to record an assignment of the promissory note before a valid foreclosure by advertisement can be commenced. We conclude that the specific language of sections 580.02 and 580.04 does not require that a promissory note assignment be recorded before foreclosing a mortgage by advertisement.

 When interpreting a statute, we must look first to the plain language of the statute. *Munger v. State,* 749 N.W.2d 335, 338 (Minn.2008). When the language of the statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* (citing Minn.Stat. § 645.16 (2006)). We are to construe a statute "as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *In re UnitedHealth Group Inc.,* 754 N.W.2d 544, 563 (Minn.2008) (citations omitted); *see also* Minn.Stat. § 645.16 (2008) ("Every law shall be construed, if possible, to give effect to all its provisions.").

Section 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:

(1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage . . .

(3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded. . . .

 Subsection (2) refers to the "debt then remaining *secured by such mort-*

*gage.*" (Emphasis added.) This clause "secured by such mortgage" is important to our analysis because it identifies the mortgage as the instrument that secures the debt. It is the security instrument that secures the debt, identifies the subject property, and provides for recovery of that property in the case of failure to repay the debt. Because the legislature specifically refers to the security aspect of the mortgage, we conclude that the legislature's use of the term mortgage in section 580.02(2) is unambiguous to the extent that the term mortgage does not refer to the debt as evidenced by the promissory note. Further, because we must apply the term mortgage consistently, we conclude that the use of the term mortgage throughout Minn.Stat. §§ 580.02 and 580.04 does not refer to the promissory note but to the security instrument itself. Therefore the statutory requirement to record assignments of the mortgage is not a requirement to record assignments of the promissory note, and the requirement to provide notice of mortgage assignments does not require giving notice of assignments of only the debt.

Based on the record before us, there is no evidence that the security instruments connected to plaintiffs' mortgages have been assigned. While plaintiffs have reason to believe the promissory notes have been assigned, we have concluded that promissory note assignments do not have to be recorded under the plain language of the foreclosure by advertisement statutes. This conclusion suggests MERS may have properly instituted foreclosure by advertisement proceedings against plaintiffs.

But plaintiffs argue that even if the statutory language specifically refers only to the security instrument, the promissory note assignments made by MERS members are an assignment of the security instrument by operation of law. Thus,

plaintiffs assert that our plain language analysis is not dispositive in this case, and that we must consider prior case law to resolve the question before us. Therefore, we proceed to address plaintiffs' second argument.

### b. Assignment of the Mortgage by Operation of Law

Plaintiffs contend that even if the plain language of the foreclosure by advertisement statutes uses the term "mortgage" to refer only to the security instrument, a promissory note assignment is an assignment of the security instrument by operation of law, and therefore must be recorded in order to foreclose by advertisement. More specifically, plaintiffs argue that because Minnesota case law states that "the mortgage follows the note," when a MERS member assigns a promissory note, an assignment of the mortgage/security instrument occurs. Therefore, according to plaintiffs, an assignment of the promissory note results in an assignment of the security instrument that must be recorded under the foreclosure by advertisement statutes.

We have held that, absent an agreement to the contrary, an assignment of the promissory note operates as an *equitable* assignment of the underlying security instrument. *First Nat'l Bank of Mankato v. Pope*, 85 Minn. 433, 434–35, 89 N.W. 318, 318–19 (1902).[5] Our precedent also establishes that in order to foreclose by advertisement, both record and *legal* title "must concur and co-exist at the same time in the same person or persons who alone have the authority to foreclose the mortgage" regardless of other equitable interests

vested in third parties. *Clarke v. Mitchell*, 81 Minn. 438, 441, 84 N.W. 327, 328 (1900). Given this precedent, our decision turns, in part, on the difference between legal and equitable title to the security instrument in the property as applied to Minnesota's foreclosure by advertisement statutory scheme.

■■■■■■ In the context of real property interests, equitable title refers to "a beneficial interest in property" and "gives the holder the right to acquire formal legal title." *Black's Law Dictionary* 1523. Likewise, an equitable assignment of a real property interest is one which "although not legally valid, will be recognized and enforced in equity." *Id.* at 128. Legal title, on the other hand, is a title that "evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." *Id.* at 1523. Finally, record title refers to a title "as it appears in the public records after the deed is properly recorded." *Id.*

■■■■ We have said that the "manifest purpose" of the foreclosure by advertisement statute's recording requirement is "to make the contents of the mortgage, and, as far as the statute goes, to make the *title to the mortgage* [a] matter of record." *Morrison v. Mendenhall*, 18 Minn. 212 (Gil. 212, 219) (1872) (emphasis added). "It is the plain intent of that statute that it is a condition precedent to the right to foreclose by advertisement that the title of an assignee of a mortgage appear of record, and of record in such manner that evidence extraneous to the record will not be needed to put [the title of the assignee

---

5. It is worth noting that the case law contains a caveat for situations in which an agreement to the contrary has been made. *First Nat'l Bank of Mankato*, 85 Minn. at 435, 89 N.W. at 319. Each named plaintiff did, in fact, enter into an agreement with MERS which stated that MERS would act as mortgagee for the original lender and its successors and assigns. But even absent such an agreement, we conclude that Minnesota case law does not treat an assignment of a promissory note to be an "assignment of the mortgage" that must be recorded under the foreclosure by advertisement statutes.

of the mortgage] beyond reasonable question." *Soufal,* 159 Minn. at 255, 198 N.W. at 808. We have explained that this requirement is not one of "supertechnical niceties and details of description." *Id.* Rather, the requirement is that the record, without the aid of extraneous evidence, "put[s] the title of the assignee of a mortgage beyond doubt." *Id.* at 255, 198 N.W. at 808–09.

Therefore, we have not required the recording of "mere equitable" interests for purposes of foreclosure by advertisement. *See Morrison,* 18 Minn. at 219–220 (Gil at 219–20); *Bottineau v. Aetna Life Ins. Co.,* 31 Minn. 125, 16 N.W. 849 (1883); *Burke v. Backus,* 51 Minn. 174, 53 N.W. 458 (1892). As we explained in *Morrison,* the statutory requirements are important because they provide "some permanent and accessible evidence of the existence and contents" of the mortgage and the title. 18 Minn. at 219 (Gil. at 219). We further explained that because the requirements had the purpose "that assignments shall be recorded, it follows that they must be made so that they can be recorded." *Id.* For that reason we concluded that "a mere equitable or parol assignment" would not serve the purposes of the requirements in the foreclosure by advertisement statute. *Id.*

But plaintiffs contend that when a MERS member transfers a promissory note, the transfer is not a mere equitable assignment. They argue that because MERS is a nominee or agent for the member, MERs does not actually hold legal title.[6] Rather, plaintiffs argue that the member holds legal title, and therefore when the promissory note is assigned a

transfer of legal title has actually occurred which must be recorded before foreclosure by advertisement.

Yet, MERS is the mortgagee of record on plaintiffs' loans, and for the reasons stated in *Morrison,* we have held that a mortgagee of record does not lose legal title when the mortgagee transfers interests in the promissory note. In cases where the mortgagee of record has made several partial assignments to third parties but retained some personal interest in the promissory note and security instrument, we have allowed the mortgagee of record to foreclose by advertisement. *E.g., Bottineau,* 31 Minn. 125, 16 N.W. 849. In *Bottineau,* we said that the legal title to the mortgage and the power of sale vested in the mortgagee of record despite the partial assignments. *Id.* at 127, 16 N.W. at 850. We concluded that the mortgagee of record "held legal title in trust for [the partial assignees] to the extent of their interest," and that the partial assignees "alone could object to his action, or attempt to control him in his action, under such legal title." *Id.* Thus, it is evident from our case law that while a partial assignment of the promissory note constitutes an equitable assignment of the mortgage, the partial assignment does not affect either legal or record title.

Plaintiffs attempt to distinguish *Bottineau* on the ground that the case concerned only partial assignments of the debt. Plaintiffs argue that because *Bottineau* involved only partial assignments of the debt, it is an example of an exception to the general rule that a party cannot separate the promissory note from the security instrument. In other words, plain-

---

**6.** Plaintiffs do not challenge MERS' power to foreclose by advertisement as an agent for its members because plaintiffs agree that as an agent for its members MERS may act on their behalf. Rather, it is plaintiffs' contention that

an assignment of the promissory note as between MERS members constitutes a transfer in legal title, and therefore the assignment must be recorded to establish MERS authority to act as an agent for the assignee member.

tiffs argue that a mortgagee cannot hold legal title to a mortgage unless that mortgagee also has at least some interest in the underlying indebtedness. For this reason, plaintiffs argue that MERS cannot hold legal title.

Plaintiffs point to *Hathorn v. Butler*, 73 Minn. 15, 75 N.W. 743 (1898) (Collins, Loren, J.), in support of their argument. In *Hathorn*, Mary Mann asked her brother, Charles Butler, to act as mortgagee on her behalf. Transcript of Hearing at line 56, p. 19, *Hathorn*, 73 Minn. 15, 75 N.W. 743.[7] At Mann's request, a third party assigned the promissory note and security instrument to Butler. *Hathorn*, 73 Minn. at 18–19, 75 N.W. at 743. After Butler recorded the mortgage in his name, the promissory note and security instrument were assigned to Mann, but the parties agreed that Butler would continue to serve as record titleholder on her behalf. *Id.* at 19, 75 N.W. at 743–44. Mann subsequently foreclosed in Butler's name. *Id.*

When the mortgagor challenged Mann's legal ability to foreclose in Butler's name, we concluded that because the promissory note and security instrument had been assigned to Mann, the foreclosure by advertisement statutes prohibited foreclosure by advertisement in Butler's name. *Id.* at 20, 75 N.W. at 744. We held that, regardless of the parties' intentions, legal title passed upon execution and delivery of the promissory note *and* the security instrument from Butler to Mann. *Id.* We said that the power of sale to foreclose by advertisement cannot be "severed from the legal ownership of the mortgage itself, and it is to be exercised by the holder of such legal title, provided [the] title has been made a matter of record." *Id.*

But we conclude that *Hathorn* is not dispositive of this case because the facts are different. In *Hathorn*, both the promissory note *and* the security instrument had been assigned. *Id.* Because the security instrument assignment had been both executed and delivered, we held that legal title had passed. *Id.* Once legal title to the mortgage had been assigned, the statute required the assignment be recorded before foreclosure by advertisement proceedings could be commenced. *Id.* Here MERS is not like Butler because, according the evidence before us, it appears that the security instruments securing plaintiffs debts are in MERS's name and have not been assigned.

A broader review of our case law demonstrates that it is possible for a party to hold legal title in the security instrument—title that evidences apparent ownership but does not necessarily signify a beneficial interest—without holding an interest in the promissory note. For example, in *Wilson v. Hayes*, we held that a promissory note assignment did not affect legal title. 40 Minn. 531, 42 N.W. 467 (1889). Wilson was a creditor who endorsed and sold a promissory note to a bank but did not assign the security instrument. *Id.* at 532, 42 N.W. at 468. After the senior lien had been foreclosed, Wilson repurchased the promissory note from the bank in order to redeem under his junior interest. *Id.* Wilson's efforts to redeem were challenged on the ground that the transfer of the debt between Wilson and the bank acted as an equitable assignment of the security instrument requiring Wilson to produce documentation of the assignment before he could redeem his interest as a creditor. *Id.* at 532–33, 42 N.W. at 468.

---

**7.** The transcript was submitted to the court as part of the fact record in 1898. The record is preserved in 516 Briefs & Paper Books at tab 15, which is available at the Minnesota State Law Library.

We rejected the challenge in *Wilson* on the ground that the security instrument "stood in Wilson's name all the time." *Id.* at 533, 42 N.W. at 468. We explained that while an assignment of the promissory note carried with it "equitably all beneficial interest" in the security instrument, Wilson was returned to his original status when he repurchased the promissory note. *Id.* At that point, we said, Wilson "again became the equitable as well as the legal holder of the mortgage," allowing him to redeem under the statute. *Id.* Our holding in *Wilson* demonstrates that equitable interests can be separated from legal title.

A year later we expressed more directly our opinion that legal and equitable title can be separated. *Carpenter v. Artisans' Sav. Bank* was a chattel mortgage case in which equitable title to a security was in one person, and the apparent or legal title was in another. 44 Minn. 521, 522, 47 N.W. 150, 150 (1890). The holder of the equitable interest in the loan foreclosed in the name of the legal title holder. *Id.* Relying on *Bottineau v. Aetna Life Insurance Co.*, 31 Minn. 125, 16 N.W. 849 (1883), we allowed the owner of the equitable interest to foreclose, stating:

> [It must] be true, that if the holder of the legal title allows the equitable owner to foreclose, using his name, both are bound, and the foreclosure is valid. It is a matter between them alone, and does not concern the mortgagor.... So in this case, if the one in whom the legal title to the mortgage stood was content that the equitable owner—the one entitled to have the mortgage foreclosed, and to the benefit of the foreclosure—should foreclose, using his name for the purpose, it did not affect the interests of the mortgagor, and he could not object.

*Carpenter*, 44 Minn. at 523, 47 N.W. 150, *cited in Clarke v. Mitchell*, 81 Minn. 438, 441, 84 N.W. 327, 328 (1900) (applying the legal principle in a foreclosure by advertisement case) and *Curtis v. Cutler*, 76 F. 16, 17 (8th Cir.1896).

The principle articulated in *Carpenter* was reaffirmed in *Burke v. Backus*, 51 Minn. 174, 53 N.W. 458 (1892), where in the course of deciding the dispute before us, we discussed a hypothetical very similar to the situation presented by the facts of this case. The hypothetical involved a person who buys a debt secured by a security instrument. *Id.* at 178, 53 N.W. at 459. But the person does not take a formal assignment of the security instrument on the premise that, because "the mortgage follows the debt," he is the equitable owner of the security instrument. *Id.* We said that "no one would claim ... that the assignee of the debt could exercise the power of sale in his own name." *Id.* Rather, we held that "our own decisions have repeatedly recognized" the doctrine that the debt, and consequently the real ownership of the security instrument, may be in one person, "while what may be termed the 'legal title'" to the security instrument is in another. *Id.* at 178–79, 53 N.W. at 459 (citing *Brown v. Delaney*, 22 Minn. 349; *Bottineau*, 31 Minn. 125, 16 N.W. 849; *Solberg v. Wright*, 33 Minn. 224, 22 N.W. 381). We said that in such cases "the power of sale must be exercised in the name of the party who has the legal title to the instrument." *Id.* at 179, 53 N.W. at 459.

 We affirm today the principles set forth in the foregoing cases. Our case law establishes that a party can hold legal title to the security instrument without holding an interest in the promissory note. The cases demonstrate that an assignment of only the promissory note, which carries with it an equitable assignment of the security instrument, is not an assignment of legal title that must be recorded for purposes of a foreclosure by

advertisement. In essence, any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement. *E.g., Carpenter,* 44 Minn. at 523, 47 N.W. at 150; *Bottineau,* 31 Minn. at 127, 16 N.W. at 850; *see also Bausman v. Faue,* 45 Minn. 412, 419, 48 N.W. 13, 16 (1891) (writing that the legal title holder of the security instrument holds the security instrument in trust for those with equitable interests). Thus, we hold that even though an assignment of the promissory note with no accompanying assignment of the security instrument constitutes a mere equitable assignment of the mortgage, it does not by operation of law need to be recorded to meet the requirements necessary to commence a foreclosure by advertisement.[8]

 In sum, we conclude that both of plaintiffs' arguments fail. First, we conclude that the plain language of sections 580.02 and 580.04 of the foreclosure by advertisement statutes use the term mortgage to refer to security instrument assignments and not to promissory note assignments. Second, this interpretation is consistent with our longstanding principles of real property law which establish that while a promissory note assignment does constitute an equitable assignment of the security instrument, a promissory note assignment is not an assignment affecting legal title, and only assignments of legal title of the security instrument must be recorded in order to commence a foreclo-

sure by advertisement. Thus, on the facts before us, the term mortgage as used in the foreclosure by advertisement statutes does not appear to require MERS members to record promissory note assignments before foreclosure by advertisement.

### III.

Plaintiffs have expressed concern that the outcome we reach may cause them to lose defenses to foreclosure that are available to them under federal statutes. More particularly, plaintiffs claim that for a mortgagor to assert certain rights under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. (2006), the mortgagor must know the identity of the lender or owner of the promissory note. Plaintiffs claim that under the holding we reach today they will only be able to obtain the identity of the servicer, originator, and/or nominee, and they believe that such information is insufficient to assert their TILA defenses.

Specifically, plaintiffs are concerned about the provisions of TILA that allow for loan rescission. As plaintiffs assert, rescission is a remedy for certain disclosure/notice failures. 15 U.S.C. § 1641 (2006). But rescission claims cannot be brought against a servicer. *Id.* § 1641(f)(1). Under TILA, the servicer is obligated to give, to the best of its knowledge, information about who owns the mortgagor's indebtedness. *Id.* § 1641(f)(2). But TILA does not contain any enforcement provision for this obligation. *Id.* There is some evidence that

---

8. While we acknowledge the attraction of the dissent's attempt to simply interpret the term "assignments of the mortgage" as used in Minnesota's foreclosure by advertisement statutory scheme, we conclude the dissent's interpretation is not accurate when viewed in the context of mortgage law in Minnesota. Longstanding principles of Minnesota's real

property law dictate our decision and we do not believe it wise to upset these established principles. It is not the role of this court to make policy changes to the foreclosure statutes, and any changes to the procedures presently required under Minnesota's foreclosure by advertisement statutory scheme should be effectuated by the legislature.

mortgagors have trouble identifying the lender/creditor despite these obligations. *E.g.,* Christopher L. Peterson, *Predatory Structured Finance,* 28 Cardozo L.Rev. 2185, 2265–68 (2007) (noting the circular efforts of homeowners or their representatives who attempt to find information about their loan and discussing the negative consequences on mortgagors trying to assert defenses against foreclosure).

Plaintiffs' concerns derive from certain cases from the United States Court of Appeals for the Ninth Circuit in which mortgagors attempted to rescind their loan transaction but, because the mortgagors did not learn the identity of the lender within the time period set by the statute of limitations, their attempts to rescind were barred. *E.g., Miguel v. Country Funding Corp.,* 309 F.3d 1161, 1162–65 (9th Cir. 2002) (barring homeowner's claim under statute of limitations because homeowner filed notice of rescission with the servicer, Countrywide, because the homeowner did not know Countrywide was only a servicer until three years into the lawsuit). We share plaintiffs' concern over the possibility that our decision today may foreclose federal remedies that are otherwise available to homeowners. Were it before this court, we might be inclined to interpret the TILA language differently than the Ninth Circuit did. But we are not faced with interpreting TILA, and longstanding principles of property law dictate our interpretation of the foreclosure by advertisement provisions that are before us.

In addition, we note that the Minnesota Legislature has amended chapter 580 to help mortgagors facing foreclosure by advertisement. Act of May 18, 2008, ch. 341, art. 5, §§ 6, 7, 2008 Minn. Laws 1390, 1422–23 (codified at Minn.Stat. §§ 580.02 and 580.021 (2008)). Under the new sections, it is a prerequisite to foreclosure by advertisement that the mortgagees provide mortgagors with information on the availability of counseling. Minn.Stat. §§ 580.02–.022 (2008). The Minnesota Legislature has attempted to provide homeowners facing possible foreclosure by advertisement with greater information and access to help. These legislative efforts may help homeowners to better navigate the possible legal pitfalls outlined by plaintiffs.

### IV.

Finally, we address plaintiffs' broader policy argument. Plaintiffs' posit that as a matter of equity we should require recording of promissory note assignments. In a time of financial crisis, accelerating mortgage foreclosures, and rising frustration with the mortgage banking industry, it is hard not have some nostalgia for earlier times. Looking at the mortgage banking industry today, it is apparent that in many mortgage transactions a George Bailey no longer sits in the corner office of the Building and Loan Association in Bedford Falls.[9] The mortgage banking industry has changed, and with this change certain problems and shortcomings have become evident, especially in the secondary mortgage market. Plaintiffs, in their broad policy argument, ask us to remedy these problems and shortcomings in our decision today. But resolving these problems is beyond the scope of the issue before us and thus beyond our decision-making authority. As a court that reviews and interprets the laws of this state, we must apply the foreclosure by advertisement statutes

---

9. This change in the mortgage banking industry has led one commentator to ask, "What would George Bailey do?" in reference to the character George Bailey in the movie *It's a* *Wonderful Life. See* Edward Rothstein, *What Would George Bailey Do?,* N.Y. Times, at C1 (Nov. 4, 2008).

as they have been written by the legislature and as they have been applied and interpreted in the past. The statutory language and our precedent both establish that under chapter 580 a promissory note assignment by MERS members does not have to be recorded before MERS can commence a foreclosure by advertisement, therefore our response to the federal court's certified question must be no.

Certified question answered in the negative.

PAGE, Justice (dissenting).

The plain language of Minn.Stat. § 580.02 (2008) requires that assignments of the debt secured by a mortgage be recorded before the mortgage can be foreclosed by advertisement. Further, because, as the court acknowledges, such assignments carry with them equitable interests in the mortgage itself, I believe Minnesota law requires that all assignments of a mortgage be recorded before a foreclosure by advertisement may be commenced.

This case poses a question of statutory interpretation. When interpreting a statute we look first to the plain language of the statute. *Munger v. State,* 749 N.W.2d 335, 338 (Minn.2008). I therefore begin my analysis with the plain language of section 580.02. Because the plain language of these statutes answers the question we are called upon to answer, it is unnecessary to address anything else.

Section 580.02 requires, before a mortgage may be foreclosed by advertisement, "that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded." As the court acknowledges, because foreclosure by advertisement is purely a creature of statute, its provisions must be strictly construed and the foreclosing party must strictly comply with the statutory require-

ments. *Moore v. Carlson,* 112 Minn. 433, 434, 128 N.W. 578, 579 (1910).

The court concludes that "an assignment of only the promissory note ... carries with it an equitable assignment of the security instrument," that is, the mortgage. But, having concluded that an assignment of the promissory note is also an assignment of the mortgage (even if only an equitable one), the court fails to see the implications of that conclusion under the statute. Section 580.02 requires that "all assignments" of the mortgage have been recorded. The legislature could not have been more clear. If the assignment can be made in writing (and there is no reason that these assignments cannot be), it must be recorded before the mortgage can be foreclosed by advertisement. *See Backus v. Burke,* 48 Minn. 260, 270, 51 N.W. 284, 286 (1892) ("The statute requiring a record governs where in form it is an assignment....").

Not only is this result dictated by the plain language of section 580.02, it is also dictated by what I understand to be the legal structure of the Mortgage Electronic Registration System (MERS). MERS claims to hold legal title, but only legal title, to the mortgage being foreclosed. MERS also claims that in foreclosing mortgages it acts only as nominee for its members. But MERS can act as nominee for only the particular MERS member who holds the promissory note at any particular time and, when that promissory note is assigned between members, the member for which MERS acts as nominee, and on whose behalf MERS holds legal title, necessarily changes. In other words, the entity on whose behalf MERS holds legal title to the mortgage changes every time the promissory note is assigned. Thus, even if the statutory language were not so plain, I would still conclude that transfers of the mortgage resulting from

assignments of the promissory note between MERS members must be recorded before the mortgage can be foreclosed by advertisement.

The legislative requirement that "all assignments" of the mortgage be recorded before a mortgage can be foreclosed by advertisement is also sound public policy. First, we have observed that

> the manifest purpose of this requirement of the statute was to make the contents of the mortgage, and, so far as the statute goes, to make the title to the mortgage, matters of record; and for obvious reasons it was important, not only to the parties to the mortgage itself and to assignees, but to subsequent incumbrancers, creditors, and contemplating purchasers, that some permanent and accessible evidence of the existence and contents of the mortgage, and of the title to the same, should be provided.

*Backus,* 48 Minn. at 269, 51 N.W. at 286. We said again, nine years later, that the provisions requiring that mortgages and their assignments be recorded "were enacted to avoid confusion, and to guard and protect interests in real property of record." *Clarke v. Mitchell,* 81 Minn. 438, 441, 84 N.W. 327, 328 (1900). These purposes are not served if the only thing that is disclosed is the identity of the holder of bare legal title to the mortgage and if all others who have had an interest in the mortgage can remain undisclosed.

Second, Minn.Stat. § 580.21 (2008) allows a sale in a foreclosure by advertisement to be set aside provided the action to do so is commenced within 15 years after the sale. By allowing foreclosure by advertisement to be set aside, the legislature did not intend to prevent challenges to foreclosure by advertisement. But by allowing the identities of the assignees of the promissory note to remain hidden, the court's result essentially eliminates the ability of the mortgagor to assert a wide range of defenses to foreclosure.

Finally, it is apparent with the benefit of hindsight that the ability of lenders to freely and anonymously transfer notes among themselves facilitated, if not created, the financial and banking crisis in which our country currently finds itself. It is not only borrowers but also other lenders who rightfully are interested in who has held a particular promissory note. For example, a lender who holds a promissory note that has become worthless may have an interest in knowing the hands through which that note passed. Under the MERS system, however, the identity of those previous holders is as shielded from the lender's view as it is from the borrower's. As a result of the court's holding, namely, that mortgage transfers between MERS members need not be recorded before a mortgage can be foreclosed by advertisement, neither borrowers nor lenders will ever be able to hold anyone in the chain of transfers accountable. That is not sound public policy.

I therefore respectfully dissent.