# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1292

_____

| | | |
|---|---|---|
| Kenath Richard Stein, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Chase Home Finance, LLC; | * | |
| National City Bank, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: October 20, 2011
Filed: December 1, 2011

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Kenath Stein brought this lawsuit in state court challenging the validity of both the foreclosure of his home by Chase Home Finance, LLC (Chase), and the redemption of his home by a junior lienholder, National City Bank (National). After Chase and National jointly removed the case to federal court, the district court[1]

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota, adopting the reports and recommendations of the Honorable Jeanne J. Graham, United States Magistrate Judge for the District of Minnesota.

granted their respective motions for summary judgment concluding the foreclosure and redemption were both valid. Stein appeals contending Minnesota law required Chase to hold both the mortgage and the promissory note at the time of the foreclosure, and genuine issues of material fact remain as to whether Chase held the note. Stein further contends National's redemption was invalid because the foreclosure itself was invalid. We affirm.

I

In October 2006, Stein refinanced his home in Orono, Minnesota, with Chase Bank USA, N.A. (Chase Bank). In exchange for a loan of $484,000, Stein signed a promissory note and granted Chase Bank a mortgage on his home to secure payment of the note. The mortgage was dated October 18, 2006, and was duly recorded in the Hennepin County Recorder's Office on November 15, 2006. Under the terms of the note and mortgage, Stein was obligated to make monthly payments until the note was paid in full. Failure to make a payment would result in a default, in which case Chase Bank could accelerate the debt and foreclose the mortgage. The terms of the note and mortgage also provided both instruments were freely assignable or otherwise transferable without prior notice to Stein.

In January 2007, Stein obtained a loan from National in the amount of $100,000, signing a promissory note and granting National a second mortgage on his home to secure payment of the loan. The second mortgage, like the first mortgage, was duly recorded in the Hennepin County Recorder's Office on February 15, 2007.

Stein defaulted on Chase Bank's mortgage by failing to make a loan payment due on March 1, 2008. Although Stein subsequently paid some amounts due on his loan, he did not cure the default entirely. By August 28, 2008, Stein had missed several loan payments and owed nearly $30,000 under Chase Bank's mortgage and

note.  On September 17, 2008, Chase Bank notified Stein by letter his loan was in default and foreclosure proceedings would be commenced.

On September 28, 2008, pursuant to its contractual right to transfer the note and mortgage, Chase Bank executed an "Assignment of Mortgage" in favor of Chase Home Finance (Chase).  The assignment indicates Chase Bank "hereby sell, assigns and transfers to Chase . . . the Assignor's interest in the Mortgage dated 10/18/2006 executed by Kenath Richard Stein . . . together with all right and interest in the note[.]"  Chase's App. at 61.  This assignment was duly recorded in the Hennepin County Recorder's Office on October 3, 2008.

After receiving the assignment, Chase commenced a foreclosure by advertisement pursuant to Chapter 580 of the Minnesota Statutes.  After publishing the required notices of foreclosure, a sheriff's sale was held on January 21, 2009.  Chase was the highest bidder at the sheriff's sale, purchasing Stein's home for $524,558.22.  Following the sale, Chase obtained a sheriff's certificate of sale, which under Minnesota law serves as prima facie evidence of the validity of the foreclosure.  See Minn. Stat. § 580.19 ("Every sheriff's certificate of sale . . . shall be prima facie evidence that all the requirements of law . . . have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired.").

Stein had six months to redeem the property by paying Chase the amount it paid at the sheriff's sale plus interest.  See Minn. Stat. § 580.23 subd.1.  Stein did not exercise his statutory right of redemption within the six-month period.  On July 22, 2009, after six months had passed, National exercised its statutory right of redemption as a junior lienholder, see Minn. Stat. § 580.24, and purchased Stein's home for the amount Chase paid at the sheriff's sale plus the required fees and interest.

Acting pro se, Stein filed a complaint against Chase and National in Hennepin County District Court challenging the validity of the foreclosure. Chase and National jointly removed the action to federal court and filed motions for summary judgment. Still representing himself pro se, Stein opposed the motions. Both matters were referred to a magistrate judge for a report and recommendation.

The magistrate judge characterized Stein's pro se claim against Chase as what has been colloquially termed a "show me the note" claim, in which foreclosures are challenged when the original paperwork evidencing a note and mortgage has been lost due to the widespread practice of reselling and bundling mortgages. A "show me the note" plaintiff typically alleges a foreclosure is invalid unless the foreclosing entity produces the original note. The magistrate judge found there was no evidence of forgery, irregularity, or bad faith in Stein's case.[2] Instead, the magistrate judge recommended granting Chase's motion for summary judgment after finding Chase became the holder in due course of both the note and the mortgage pursuant to a valid assignment from Chase Bank. The magistrate judge further determined the sheriff's certificate of sale was prima facie evidence of the validity of the foreclosure of Stein's home, and Stein failed to rebut the presumption of validity.

Similarly, the magistrate judge recommended granting National's motion for summary judgment. Stein alleged National violated the Minnesota Uniform Commercial Code when it "foreclosed" on his mortgage. The magistrate judge rejected this claim because National did not participate in the foreclosure but merely redeemed its interest in the property after Stein failed to redeem within the six-month statutory redemption period. The magistrate judge determined Stein failed to produce any evidence to indicate National did not comply with the statutory requirements for redemption under Minn. Stat. § 580.24.

---

[2]During discovery, Chase produced the original promissory note, signed by Stein in blue ink, and allowed him to examine it.

The district court adopted both recommendations, entered orders granting the motions for summary judgment, and dismissed Stein's claims with prejudice. Stein, now represented by counsel, filed timely appeals.

II

We review the district court's grant of summary judgment de novo. Macheca Transp. v. Phila. Indem. Ins. Co., 649 F.3d 661, 667 (8th Cir. 2011).

On appeal, Stein raises both an issue of law and an issue of fact to challenge the validity of Chase's foreclosure. Stein first contends Minnesota law requires a mortgagee to possess both the note and the mortgage in order to foreclose by advertisement under Chapter 580 of the Minnesota Statutes. In addition, Stein contends he has raised genuine issues of material fact as to whether Chase actually possessed the note at the time it instituted foreclosure proceedings.

A

We first address Stein's contention Minnesota law requires the holder of legal title to a mortgage to possess the corresponding promissory note before it can institute non-judicial foreclosure by advertisement. To answer this question, we look no further than the Minnesota Supreme Court's decision in Jackson v. Mortgage Electronic Registration Systems, Inc., 770 N.W.2d 487 (Minn. 2009). In Jackson, the Minnesota Supreme Court answered a question certified to it by a federal district court pursuant to Minn. Stat. § 480.065 subd.3. Paraphrasing, the certified question was whether the transfer of a promissory note, without an accompanying transfer of the mortgage, must be recorded before a foreclosure by advertisement could be commenced under Chapter 580 of the Minnesota Statutes. 770 N.W.2d at 489. To resolve that question, the court engaged in a lengthy discussion and analysis of Minnesota real property law which focused in large part on whether the legal and

equitable interests in a mortgage could be separated. Id. at 497-501. The court then reached several conclusions which were essential to its final holding that an assignment of a note need not be recorded. Id. at 501.

As relevant to the issue we must resolve, i.e., whether the legal title holder of a mortgage must also possess the corresponding promissory note to commence a foreclosure by advertisement, the Minnesota Supreme Court clearly stated "a party can hold legal title to the [mortgage] without holding an interest in the promissory note." Id. at 500. Before reaching that conclusion, the court analyzed Minnesota cases which "held that a mortgagee of record does not lose legal title when the mortgagee transfers interests in the promissory note," id. at 498 (discussing Morrison v. Mendenhall, 18 Minn. 232 (1872)), and which "allowed the mortgagee of record to foreclose by advertisement" despite a partial assignment of the note because the "assignment does not affect either legal or record title [in the mortgage]." Id. (discussing Bottineau v. Aetna Life Ins. Co., 16 N.W. 849 (Minn. 1883)).

In other words, the right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage. The assignment of the promissory note to another "operates as an *equitable* assignment of the underlying [mortgage]," id. at 497, but the right to enforce the mortgage remains with the legal holder of the mortgage. "[A]ny disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement." Id. at 501.

It is undisputed Chase was the mortgagee of record and held legal title to Stein's mortgage. Chase Bank assigned the mortgage to Chase on September 28, 2008. The assignment was duly recorded in the Hennepin County Recorder's Office. Thus, Chase was the party entitled to commence a foreclosure by advertisement under

Minnesota law, even if the promissory note (and the corresponding equitable interest in the mortgage) had been transferred to someone else.

B

Assuming *arguendo* Minnesota law required Chase to possess the note, the district court correctly granted Chase's motion for summary judgment in any event because Stein did not raise any genuine issues of material fact showing Chase was not the holder of the note at the time of the foreclosure. As recited above, the record indicates Chase Bank transferred both the mortgage *and* the promissory note to Chase on September 28, 2008, before Chase commenced its foreclosure by advertisement. The "Assignment of Mortgage" clearly states Chase Bank "hereby sells, assigns and transfers to Chase . . . the Assignor's interest in the Mortgage dated 10/18/2006 executed by Kenath Richard Stein . . . *together with all right and interest in the note*[.]" Chase App. at 61 (emphasis added). The record further reflects Chase produced the original note during discovery, signed in blue ink by Stein, and allowed him to examine it.

In support of his claim that Chase did not possess the note in September 2008 before it commenced foreclosure proceedings, Stein contends Chase Bank had already transferred the promissory note to JP Morgan Chase Bank on December 1, 2006. The record clearly dispels this claim. The document upon which Stein relies is a "Notice of Assignment, Sale or Transfer of Servicing Rights." Appellant's App. at 74. As the document's title suggests, the only interest in the Stein transaction transferred to JP Morgan was the right to service the mortgage. Nothing in the document suggests the promissory note itself was ever transferred to JP Morgan. Thus, Stein did not present any evidence in the district court to contradict the clear language of the September 2008 "Assignment of Mortgage" from Chase Bank to Chase. In addition, Stein did not present any evidence in the district court to

overcome the presumption of validity created by the sheriff's certificate of sale pursuant to Minn. Stat. § 580.19.

We conclude the district court did not err in granting Chase's motion for summary judgment. Minnesota law did not require Chase to possess Stein's promissory note at the time it commenced foreclosure by advertisement, and even if Minnesota law imposed such a requirement the undisputed facts establish Chase possessed the note.

C

Finally, we address Stein's challenge to National's redemption of the property as a junior lienholder. In large part, Stein's challenges to National's redemption are directly tied to his claim that Chase's foreclosure was invalid. Because we conclude Chase's foreclosure was valid, Stein's arguments regarding the validity of National's redemption necessarily fail.

Stein's one untethered argument focuses on National's merger with PNC Bank. National merged with PNC Bank in November 2009, after the redemption of Stein's home on July 22, 2009. Stein contends National may not have owned the second mortgage and note at the time of its redemption, however, because he alleges PNC Bank acquired National through an asset sale in December 2008. Thus, even though the merger was not complete until after the redemption, Stein claims National's assets, including Stein's mortgage and note, may have already been transferred to PNC Bank at the time of the redemption.

We decline to address this argument because Stein never challenged National's redemption in the district court on the grounds that the asset transfer between PNC and National occurred prior to the July 2009 redemption. This is an argument he developed for the first time on appeal. As a result, National did not have a chance to

develop a factual record on this issue in the district court, and the record on appeal does "not contain the findings necessary to an evaluation of the validity of [Stein's] arguments." Campbell v. Davol, Inc., 620 F.3d 887, 892 (8th Cir. 2010) (quotation marks and citation omitted).

## III

We affirm the district court's judgment.

_____