Kevin M. MURPHY, Kathleen K. Murphy, James L. Lang, Charlene Ann Brady, Erika R. Hogenson, Harold J. Thompson, III, Julianne Thompson, Miriam E. Stone, May K. Vang, Jeffrey A. Kirschbaum, and Tou A. Vang, Plaintiff,

v.

AURORA LOAN SERVICES, LLC, Aurora Bank FSB, Mortgage Electronic Registration Systems, Inc., Merscorp, Inc., and Wilford & Geske, P.A., Defendants.

Civ. No. 11–2750 (ADM/JJK).

United States District Court, D. Minnesota.

May 4, 2012.

Jeffrey R. Vesel, Esq., Jeffrey R. Vesel Law Firm, counsel for Plaintiffs Kevin Murphy and Kathleen Murphy.

William B. Butler, Esq., Butler Liberty Law, LLC, counsel for Plaintiffs James Lang, Charlene Brady, Erika Hogenson, Harold Thompson, Julianne Thompson, Miriam Stone, May Vang, Jeffrey Kirschbaum, and Tou Vang.

Eric D.. Cook, Esq., and Michael R. Sauer, Esq., Wilford, Geske & Cook, P.A.; and J. Matthew Goodin, Esq., and Julia C. Webb, Esq., Locke Lord LLP, counsel for Defendants.

### ORDER AND MEMORANDUM

JEFFREY J. KEYES, United States Magistrate Judge.

This matter is before the Court on Certain Defendants' Motion for Sanctions

Against Plaintiffs' Counsel (Doc. No. 39). Based on the parties' submissions and arguments, together with all pleadings, records, and files herein, the motion is granted in part and denied in part.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Certain Defendants' Motion for Sanctions Against Plaintiffs' Counsel (Doc. No. 39), is **GRANTED IN PART** and **DENIED IN PART**;

2. Pursuant to Fed. R. Civ. P. 11, attorney William Butler shall pay to Defendants Aurora Loan Services, LLC, Aurora Bank FSB, Mortgage Electronic Registration Systems, Inc., and MERSCORP, Inc. a sanction in the amount of $50,000, for part of their fees and costs. This amount is due and payable within 10 days of the issuance of this Order; and

3. The following Memorandum is incorporated herein by reference.

## MEMORANDUM

### I. BACKGROUND

Plaintiffs—homeowners and mortgagors with residential properties in four different Minnesota counties—brought suit, through their counsel William B. Butler,[1] against Defendants Aurora Loan Services, LLC, Aurora Bank FSB, Mortgage Electronic Registration Systems, Inc., and MERSCORP, Inc. (collectively the "Certain Defendants" or "Bank Defendants"), and Defendant Wilford & Geske, P.A., challenging the foreclosures of the mortgages on their homes. (Doc. No. 6, Am. Compl. ¶¶ 1–8.) The Bank Defendants removed this case from Ramsey County District Court to this Court on September 26, 2011. On January 12, 2012, 2012 WL 104543, United States District Court Judge Ann D. Montgomery denied Plaintiffs' motion for remand, concluding that Plaintiffs had fraudulently joined Defendant Wilford & Geske, P.A., and granted Defendants' motions to dismiss, calling this case "baseless" and "frivolous." (Doc. No. 48, 1/12/12 Order at 9 ("While the staggering number of foreclosures amidst the ongoing housing crisis suggests that more than a few banks may have violated homeowners' rights, baseless cases like this one brought by Mr. Butler detract and distract from serious, legitimate claims.").) On February 13, 2012, Plaintiffs appealed Judge Montgomery's decision to the Eighth Circuit. (Doc. No. 69.)

Before the Court now is the Bank Defendants' motion for sanctions against Mr. Butler—brought pursuant to Federal Rule of Civil Procedure 11(c), 28 U.S.C. § 1927, and the Court's inherent authority to sanction—for his bad faith conduct in litigating this suit. The Bank Defendants argue that the Court should sanction Mr. Butler because he failed to conduct a reasonable inquiry into the relevant facts, failed to conduct a reasonable inquiry into the relevant law or has chosen to ignore binding precedent, failed to withdraw allegations and claims even after notice that they are false and frivolous, and has abused the judicial process by filing frivolous complaints for an improper purpose. Specifically, they request that the Court enter an order:

(a) requiring Attorney William B. Butler and Butler Liberty Law, LLC to refund all fees collected from the Plaintiffs in this action;

(b) requiring Butler to attend a comprehensive continuing education pro-

---

1. Mr. Butler originally represented Plaintiffs Kevin M. Murphy and Kathleen K. Murphy among all of the other Plaintiffs. However, on January 23, 2012, after the motion for sanctions was filed and after the case had been dismissed, a Notice of Substitution of Counsel was made by Attorney Jeffrey R. Vesel on behalf of the Murphy Plaintiffs. (Doc. No. 57.)

gram on the laws governing foreclosure by advertisement in Minnesota; and

(c) requiring Butler and Butler Liberty Law, LLC to reimburse the Aurora/MERS Defendants for the attorneys' fees and costs they have incurred in defending this action.

(Doc. No. 39, Certain Defs.' Mot. for Sanctions Against Pls.' Counsel at 1.) At the hearing, Defendants also raised the issue that certain attorney affidavits have been filed by Mr. Butler in this case signed by various attorneys other than Mr. Butler, and requested that the Court impose a nominal sanction on these attorneys as well. This issue was not raised in Defendants' motion or memorandum in support if their motion, and therefore the Court concludes that this request is not properly before the Court. *See* D. Minn. Loc. R. 7.1(a)(1) (providing that *"[n]o motion shall be heard* by a magistrate judge unless the moving party" files the appropriate written materials fourteen days prior to the hearing) (emphasis added).

## II. DISCUSSION

■ First, the Court notes that district courts retain jurisdiction to impose sanctions designed to enforce their own rules, even if they no longer have jurisdiction over the substance of a case. Therefore, "[a]lthough a notice of appeal has been filed, this Court has jurisdiction to determine whether sanctions and attorney's fees are appropriate." *Anderson v. Ind. Sch. Dist. No. 97,* No. Civ. 98–2217, 2003 WL 328043, *1 (D.Minn. Feb. 10, 2003). In other words, where the sanctions issues are not before the court of appeals, the district court retains jurisdiction to consider those issues. *See id.* (citing *Harmon v. United States,* 101 F.3d 574, 587 (8th Cir.1996)); *see also Gundacker v. Unisys Corp.,* 151 F.3d 842, 848 (8th Cir.1998) (holding that where the issue of

sanctions was not before the court of appeals when the appeal was filed, the district court retained jurisdiction); *Perkins v. Gen. Motors Corp.,* 965 F.2d 597, 599 (8th Cir.1992) (recognizing that sanctions are collateral to the merits of the case and may be considered even after the merits are no longer before the district court); *Temple v. WISAP USA in Tex.,* 152 F.R.D. 591, 617 (D.Neb.1993) ("[A] district court retains jurisdiction over collateral matters, such as motions requesting Rule 11 sanctions and motions requesting attorney's fees, even when final judgment on the underlying action has been entered and is pending on appeal.").

■ Second, the Court concludes that sanctions are warranted in this case. Rule 11(b) of the Federal Rules of Civil Procedure requires an attorney to certify to the court that his client's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law...." In determining whether this provision has been violated, a court "must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Coonts v. Potts,* 316 F.3d 745, 753 (8th Cir.2003) (citation and quotations omitted). In addition to certifying that his arguments have a sound legal basis, the attorney must also certify that his pleadings, written motions, and other papers are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation...." Fed. R.Civ.P. 11(b)(1). And Rule 11 also imposes on an attorney a "duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." Fed.R.Civ.P. 11(b) and (c) advisory com-

**1020**

mittee's note, 1993 Amendments. An attorney who violates these provisions may be sanctioned. Fed.R.Civ.P. 11(c)(1). Ultimately, in evaluating a Rule 11 motion, the court determines "whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1009 (8th Cir.2006) (quotations omitted).

▮▮▮ A court considers three types of issues when faced with a motion for sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The first issue involves consideration of the factual basis for an attorney's filing. *Id.* Second, a court considers the legal issue of "whether a pleading is warranted by existing law or a good faith argument for changing the law." *Id.* (internal quotations omitted). Third, a court "must exercise its discretion to tailor an appropriate sanction." *Id.*

Here, Plaintiffs' Amended Complaint asserted thirteen causes of action, all based on the central claims that the Bank Defendants lack the legal right to foreclose by advertisement. Most of Plaintiffs' claims were premised on the "show me the note" legal theory, wherein Plaintiffs argue that the Bank Defendants must be both the record mortgagee and the holder of the promissory note to foreclose by advertisement.[2] As Judge Montgomery noted in her opinion dismissing this action, "[a]t the January 6, 2012 hearing, Defendants and Plaintiffs agreed that Defendants were in possession of most, if not all, of the promissory notes, and that Plaintiffs had been shown these notes." (Doc. No. 48, Jan. 12, 2012 Order at 2, n. 2.) Therefore, it appears that there was little, if any, factual basis for Plaintiffs' "show me the note" claims.

Moreover, there is nothing that supports that Plaintiffs' theories are warranted by existing law. As Judge Montgomery explained:

> This is not the law in Minnesota—the holder of a security instrument may foreclose without possession of the promissory note.
>
> Minnesota courts, in keeping with the rest of the nation, have consistently rejected the "show me the note" argument.

(Doc. No. 48, Jan. 12, 2012 Order at 4 (citing cases, including *Jackson v. Mortg. Elec. Reg. Sys., Inc.*, 770 N.W.2d 487, 498–501 (Minn.2009), where this argument was rejected by the Minnesota Supreme Court).) In fact, this argument has not only been rejected by the Minnesota Supreme Court, but has also been rejected by the United States Court of Appeals for the Eighth Circuit and by every federal judge sitting in Minnesota who has addressed the argument. *See Welk v. GMAC Mortg., LLC*, 850 F.Supp.2d 976, 980–81, 985–86, 2012 WL 1035433, at *1, *6 (D.Minn.2012) (citing cases and imposing a $50,000 Rule 11 sanction against Mr. Butler as well as fees under § 1927).[3]

What makes matters particularly worse in Mr. Butler's pursuit of these discredited

---

**2.** Judge Montgomery determined that the other claims asserted against the Bank Defendants—that "Defendants Are Not Real Parties in Interest" and that "Defendants Do Not Have Legal Standing to Foreclose Mortgages"—were not causes of action in the state of Minnesota, and therefore dismissed them for failure to state a cognizable claim. (Doc. No. 48, Jan. 12, 2012 Order at 6.) Further, the only non-"show me the note" claim asserted against Wilford & Geske, P.A. was Plaintiff's fraud claim, which Judge Montgomery dismissed for failure to plead with particularity. (*Id.* at 7.)

**3.** Because the Court in *Welk* imposed Rule 11 sanctions on its own motion, it was not able to award fees to defendants under Rule 11. *See* Fed.R.Civ.P. 11(c)(4) (stating that attorney's fees and other expenses directly result-

legal theories, is that he does not make a good faith effort to argue for a change in the law. Instead he continues to refuse to acknowledge that these "show me the note" claims are based on a "legal fallacy." [4] (Doc. No. 48, Jan. 12, 2012 Order at 5; *see also* Doc. No. 50, Pls.' Mem. in Opp'n to Defs.' Mot. for Sanctions 28–29 (attempting to distinguish the *Jackson* case).) And he has made a cottage industry out of filing these frivolous "show me the note" actions.[5] *See Welk*, 850 F.Supp.2d at 980–81, 985–86, 2012 WL 1035433, at *1, *6; *Jerde v. JPMorgan Chase Bank, N.A.*, No. 11–2666 (PAM/FLN), 2012 WL 206271, at *3 (D.Minn. Jan. 24, 2012); *Iverson v. Wells Fargo Bank, N.A.*, No. 11–2225 (MJD/AJB), 2011 WL 6065358, at *3 (D.Minn. Oct. 25, 2011); *Larsen v. Bank of Am., N.A.*, No. 11–1775 (MJD/JSM), 2011 WL 6065426, at *5–7 (D.Minn. July 21, 2011); *Butler v. Bank of Am., N.A.*, No. 11–461 (DWF/TNL), 2011 WL 2728321, at *5 (D.Minn. July 13,.2011). Further, Mr. Butler "has a pattern of including fraudulently joined parties [as he did here] to his 'show me the note' suits, apparently hoping to evade federal court where his nearly identical claims were summarily dismissed three times in 2011." (Doc. No. 48, Jan. 12, 2012 Order at 8–9 (citing *Iverson*, 2011 WL 6065358, at *3; *Larsen*, 2011 WL 6065426, at *6–8; *Butler*, 2011 WL 2728321, at *3).)

At the hearing on the sanctions motion in this case, the Court directly asked Mr. Butler what his basis is for continuing to assert these claims. Mr. Butler again relied, as he did in *Welk*, on three state court opinions. As Judge Schiltz explained in his dismissal/sanction order in *Welk*, "two of the three decisions cited by Butler explicitly reject his theory, and the third says not a word about it." *Welk*, 850 F.Supp.2d at 986, 2012 WL 1035433, at *6 (citing *Oppong-Agyei v. Chase Home Fin. LLC*, No. 19HA–CV–11–3026, slip. op. at 11–12 (Minn.Dist.Ct. Oct. 18, 2011); *Wollmering v. JP Morgan Chase Bank, N.A.*, No. 27–CV–11–2383, slip. op. at 7, 9 (Minn.Dist.Ct. May 20, 2011); and *Cartier v. Wells Fargo Bank, N.A.*, No. 62–CV–11–817 (Minn.Dist.Ct. July 21, 2011)). Mr. Butler also raised various claims or theories that were not pled in his Amended Complaint. By continuing to file claims and base arguments on the meritless "show me the note" theory, Mr. Butler has repeatedly ignored the rulings of this Court and other courts, and his intentional disregard for his duties to the Court requires a Rule 11 sanction—beyond that ordered in *Welk*.

The final question then is what an appropriate sanction should be. Rule 11 provides:

---

ing from the violation may be imposed as a sanction "if imposed on motion").

**4.** At the hearing on this motion, Mr. Butler said that this federal court's continued rejection of his show-me-the-note theory has resulted from the court being "bamboozled" and that the defendants are trying to transform this court into a "den of thieves." Setting aside the fact that this choice of contumacious language may not have been the best strategy for Mr. Butler to utilize in defending a sanctions motion, it illustrates the importance of levying a sanction that will deter continued bad faith conduct on his part.

**5.** Because United States District Court Judge Patrick J. Schiltz fully addressed Mr. Butler's various judicial abuses—including filing nearly thirty frivolous lawsuits, and "engaging in brazen delay tactics and judge-shopping by voluntarily dismissing actions only to turn around and refile them again immediately afterwards"—and because Judge Schiltz has forwarded a copy of his order in *Welk* to the Minnesota Lawyers Professional Responsibility Board to determine whether Mr. Butler should be disciplined for his overall conduct, this Court does not address those additional concerns here. *See Welk*, 850 F.Supp.2d at 998–1000, 2012 WL 1035433, at *19–20.

A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; and order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed.R.Civ.P. 11(c)(4). The primary purpose of Rule 11 sanctions is to "deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. 2447. Baseless filings burden both the courts and individuals with unnecessary expense and delay. *Id.* at 398, 110 S.Ct. 2447. A court exercises its discretion in imposing an "appropriate" sanction pursuant to the rule. *Id.* at 400, 110 S.Ct. 2447.

Although Rule 11, as amended, "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party," *Ridder v. City of Springfield,* 109 F.3d 288, 294 (6th Cir.1997) (citing Fed.R.Civ.P. 11 advisory committee's note, 1993 Amendments), the rule also recognizes that "under unusual circumstances . . . deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." Fed.R.Civ.P. 11 advisory committee's note, 1993 Amendments; *see also Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 400 (6th Cir.2009) ("[A]lthough it is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the vic-

tim for attorney fees arising from abusive litigation."). Accordingly, Rule 11 expressly provides that "if imposed on motion and warranted for effective deterrence," sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. CIv. P. 11(c)(4).

As mentioned above, Mr. Butler has already been sanctioned in the *Welk* case, with both a $50,000 Rule 11 sanction to the Court and attorney's fees under 28 U.S.C. § 1927, for filing almost identical claims as those filed here.[6] However, as evidenced at the hearing on the sanctions motion in this case, Mr. Butler continues, even after both Judge Montgomery's and Judge Schiltz's orders, to make the same arguments that several judges in this district have concluded are frivolous. Given this conduct, a higher sanction amount than what Judge Schiltz has already ordered is suitable here; the previous sanctions have not deterred Mr. Butler from arguing frivolous claims. And because Defendants have filed a motion for Rule 11 sanctions here, this Court has the option under Rule 11 to impose a sanction in the form of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed.R.Civ.P. 11(c)(4). Because Defendants Mortgage Electronic Registration Systems, Inc., and MERSCORP, Inc., have been forced to defend against Mr. Butler's pursuit of frivolous claims yet again, and because the other Defendants have also been burdened by paying their attorneys to defend baseless claims, the Court finds that a monetary penalty in the form of part of the reasonable attorney's fees and expenses incurred from the date Mr. Butler filed the Com-

---

6. At the time of the issuance of this Order, Judge Schiltz had not yet determined the amount of § 1927 attorney's fees to be awarded.

plaint in this case is necessary to deter repetition of Mr. Butler's filings.

The Bank Defendants ask the Court to award a sanction in an amount that would effectively deter Mr. Butler from continuing to violate Rule 11. The Bank Defendants point out that the Eight Circuit has found that a $25,000 award would be the minimum amount necessary to deter similar conduct in the future. (Doc. No. 41, Mem. in Supp. of Certain Defs.' Mot. for Sanctions Against Pls.' Counsel 18) (citing *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 628 n. 13 (8th Cir.2003).) But because returning Mr. Butler's legal fees to Plaintiffs may not reach that minimum, the Bank Defendants assert that some additional sanction of "at least some portion of [the Bank Defendants'] attorneys' fees and costs" should be awarded. (*Id.*)

At the hearing on the motion for sanctions, the undersigned directed the Bank Defendants' counsel to submit a supplement, including any supporting affidavits, explaining all attorney's fees and costs expended by the Bank Defendants' counsel in this case thus far. On April 10, 2012, the Bank Defendants' counsel submitted this supplement, and on April 16, 2012, Mr. Butler submitted his response. In the Bank Defendants' counsel's supplement, counsel states that the Bank Defendants have incurred attorney's fees and costs totaling $115,401.59 ($107,592.69 for work performed by Locke Lord LLP [$106,-383.00 in fees and $1,209.60 in costs], and $7,808.90 for work performed by local counsel Wilford Geske & Cook, P.A. [$6,742.00 in fees and $1,066.90 in costs] ). Mr. Butler disputes the reasonableness of this amount; however, it does not appear that Mr. Butler disputes the reasonableness of the amount attributed to Wilford Geske & Cook, P.A.

 Although the ultimate determination made by the Court will be how much of a sanction is necessary "to deter repetition of the conduct or comparable conduct by others similarly situated" and no more, Fed.R.Civ.P. 11(c)(4), the Court finds it appropriate to consider the attorney's fees and costs expended by Defendants in this case in tailoring an appropriate Rule 11 sanction. The lodestar method has been established as the "most useful starting point for determining the amount of a reasonable fee," and it requires a court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The reasonableness of a fee depends on a number of factors, including "the [requesting party's] overall success; the necessity and usefulness of the [requesting party's] activity in the particular matter for which fees are requested; and the efficiency with which the [requesting party's] attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir.1997). Courts also consider the prevailing market rate for similar services in the community where the litigation takes place when performed by "lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir.1988). The fee applicant bears the burden to produce evidence to support the rates charged and hours worked. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *see also Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").

Mr. Butler argues that the hourly billing rate for all of the Locke Lord LLP attor-

neys and paralegals is in excess of a reasonable local rate, which he asserts should be $175 per hour—the rate charged by the local counsel at Wilford Geske & Cook, P.A. This $175 rate, however, was a reduced contract rate negotiated between Wilford Geske & Cook, P.A., and Defendants Aurora Loan Services, LLC, and Aurora Bank FSB based on their working relationship, and is not a basis for determining what a reasonable and customary rate for this type of work is. Unfortunately, Defendants' lead attorney, J. Matthew Goodin, has submitted no support to show that the rates of $655 and $550 per hour for experienced partners,[7] $365 per hour for a fifth-year associate, and $270 to $300 per hour for paralegal work are the prevailing rates for such work in this community. He simply asserts that—

> The fees reflected in the invoices attached to this Affidavit as Exhibit A are reasonable and customary for work of this type in Chicago and comparable legal markets. I represent Aurora Bank FSB and Aurora Loan Services, LLC in similar types of litigation matters throughout the United States and these are the routine and customary rates charged for such matters.

(Doc. No. 81, Supplement to Certain Defs.' Mot. for Sanctions Against Pls.' Counsel, Attach. 1, Aff. of J. Matthew Goodin ("Goodin Aff.") ¶ 10.) He submits no detail to show that he customarily charges these rates for services in this community, and he has submitted no affidavits or other support from other lawyers in the community who have comparable levels of skill and experience verifying that these are the prevailing rates. (The Court notes that Mr. Butler has pointed the Court to nothing to contradict Mr. Goodin's affidavit either.)

However, the Court is not without any basis for determining what minimum reasonable hourly rates should be applied in reaching a lodestar figure here. Notably, Mr. Butler states no objection to the reasonableness of the fees sought by Attorney Vander Pol (at a rate of $292.25 and $328.50 per hour in 2011 and 2012 respectively for an attorney with seven years of experience) and Attorney Govze (at a rate of $200.00 per hour for an attorney with three years of experience) in the *Welk* case. Nor does he object to the fee rate submitted by Attorney Kanski (a rate of $300 and $325 per hour in 2011 and 2012 respectively for a partner at Lindquist & Vennum PLLP in Minneapolis, Minnesota). *See Welk*, No. 11–CV–2676 (PJS/JJK), Doc. No. 133 at 3, and Doc. Nos. 123 at ¶ 4, 124 at ¶¶ 2, 4, 129 at ¶¶ 1, 3.

Accordingly, for the purposes of this Court's determination of minimum reasonable fees[8] for consideration in a Rule 11 sanction, this Court finds that a minimum reasonable fee for an experienced partner is $300 per hour for time billed in 2011, and $325.00 per hour for time billed in 2012. A minimum reasonable fee for an upper-level associate is $250 per hour in 2011, and $275 in 2012. And a minimum

---

7. There is only one time entry for attorney Hugh S. Balsam at the rate of $655 for .40 hours where he was consulted regarding procedural aspects of the Eighth Circuit appeal. Although the rate seems higher than what is reasonable in this community, this was a relevant and reasonable task considering that Plaintiffs have appealed the dismissal order in this case.

8. The Court notes that reasonable fees may be even higher in this case, however, the Court need not determine the actual reasonable rate because it concludes that requiring Mr. Butler to pay $50,000—which is less than the calculated fees and costs using the minimum reasonable rate—for the Bank Defendants' counsel's legal work should be sufficient to defer Mr. Butler from future conduct that violates Rule 11.

reasonable fee for a paralegal is $100 per hour in 2011, and $125 in 2012. *See Madison v. Willis,* No. 09–930 (DWF/AJB), 2011 WL 851479 at *1 (D.Minn. Mar. 9, 2011) (finding $100–$125 per hour for paralegals a reasonable rate in this district).

Mr. Butler also argues that the effort expended by the defense team was excessive and unreasonable, specifically pointing to the facts that the team members spent a total of 40.4 hours discussing and reporting to one another, that there were reported reviews of the federal court dockets and developments in other attorney Butler cases, and there appear to be multiple charges for duplicative document retrievals. The Court notes that 40.4 hours for discussing and reporting to one another over the course of seven months of litigation is not excessive, and that reviewing Mr. Butler's other cases in this district (which raise nearly identical claims as those asserted here) is not unreasonable, but is in fact a measure of due diligence. And further, the Court is unaware of what document retrieval entries Mr. Butler claims are duplicative because he did not identify them for the Court.

However, the Court does consider the fact that this case is strikingly similar to several other of Mr. Butler's cases that have been dismissed in this district, and that the claims asserted by Mr. Butler have several times over been determined to be frivolous; therefore, defense counsel should have had the benefit of those previous decisions, and those decisions should have helped to minimize the amount of work required in this case. *Cf. Jaquette v.*

*Black Hawk County, Iowa,* 710 F.2d 455, 459 (8th Cir.1983) (noting that a court may reduce a lodestar "if there are articulable reasons for that action") (quotations omitted); *see also Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092 (5th Cir.1982) (reducing fee calculation when counsel has "pursu[ed] too zealously a claim that did not warrant such intensive effort"). Further, no discovery work was required on this case, as all discovery was stayed and suspended on stipulation of the parties after the Bank Defendants' filed their motion to dismiss. (*See* Doc. No. 22.) On the other hand, this Court recognizes that the defense attorneys here are not record counsel in the other pending and dismissed cases in this district, and the claims pled by Mr. Butler were difficult to unravel to say the least. And after review of defense counsel's final invoices to their clients, the entries appear to record necessary tasks for defending one of Mr. Butler's mortgage-foreclosure cases.

Based on all of the above, the Court finds that payment of $50,000, which is a portion of the Bank Defendants' reasonable attorney's fees,[9] is warranted and appropriate, and should deter Mr. Butler from filing more frivolous lawsuits and arguments with the Court. *See* Fed.R.Civ.P. 11(c)(4) (stating that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"). Because of the sanction recently imposed on Mr. Butler in *Welk,* the Court determines that a penalty payable to the court, in addition to the partial payment of reasonable attorney's

**9.** After reducing the attorney and paralegal fee rates as described above, the total calculation of the Bank Defendants' "minimum" reasonable attorney's fees from Locke Lord LLP is $67,950. After adding in the uncontested reasonable attorney's fees from Wilford Geske & Cook, P.A. ($7,808.90), and the costs allocated to both firms ($1,209.60 and $1066.90), the total of minimum reasonable attorney's fees and costs incurred by the Bank Defendants' counsel is $75,758.90. If the Court were to deduct 25% based on excessive effort by defense counsel, the total then becomes $56,819.17, which is still higher than the $50,000 sanction imposed by the Court.

fees and costs, is not necessary. And in light of this Rule 11 sanction, the Court finds that additional penalties under 28 U.S.C. § 1927 are not necessary.[10]

Mr. Butler submitted an affidavit in opposition to the Bank Defendants' request for attorney's fees that states: "I am a solo practitioner. I am unable to pay an award of fees and any such award would compromise my ability to represent my clients." (Doc. No. 83, Aff. of William Butler ¶ 2.) The Court finds this testimony unpersuasive. The fact that he is a solo practitioner says nothing about his ability to pay. And the statement that he is unable to pay is conclusory; Mr. Butler provides no support for this statement, such as documentation showing the current state of his or his firm's finances.

The Court also notes that the Bank Defendants have additionally requested that Mr. Butler refund all fees collected from the Plaintiffs in this action and that Mr. Butler be required to attend a comprehensive continuing education program on the laws governing foreclosure by advertisement in Minnesota. As to the latter, the Court agrees with Judge Schiltz that Mr. Butler does not need a warning or a seminar to clean up his act, but instead needs a significant monetary sanction to deter him for further misconduct. *See Welk,* 850 F.Supp.2d at 1004, 2012 WL 1035433, at *23 ("Butler's actions are not the result of negligence. Butler is a very smart and very aggressive lawyer. He does not suffer from lack of diligence or disorganization. He does not need a warning to clean up his act or a seminar on how better to manage his case load. Butler knows exactly what he is doing; he has deliberately chosen to bring hundreds of frivolous

claims in the most burdensome manner possible, and he has repeatedly used deceptive and misleading tactics to delay their ultimate resolution. Only a significant monetary sanction will deter Butler from further misconduct of this kind."). As to the former, the sanction of attorney's fees here should be enough to deter Mr. Butler so that the further sanction of refunding all fees collected from the Plaintiffs is not necessary. And the refund of fees could possibly result in an inappropriate windfall to Plaintiffs. The Court does not have sufficient information to determine whether individual Plaintiffs, for example, participated with Mr. Butler in a strategy of filing frivolous claims to gain an unfair advantage over Defendants or whether they were vulnerable and desperate homeowners who were taken unfair advantage of by Mr. Butler. Therefore, the Court concludes that the attorney's fees sanction is the appropriate remedy.

---

**10.** The Court notes that United States District Court Judge David S. Doty recently concluded that a Rule 11 sanction in the form of part, if not all, of defendants' reasonable attorney's fees was warranted in yet another similar case filed by Mr. Butler. *See Dunbar v. Wells Fargo Bank, N.A.,* 11–cv–3683 (DSD/FLN), Doc. No. 42, 2012 WL 1394666 (D.Minn. Apr. 23, 2012).