# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2903

_____

Jessica Syfco

*Plaintiff - Appellant*

v.

Encompass Indemnity Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2014
Filed: July 31, 2014

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

In this insurance coverage dispute, Jessica Syfco appeals the summary judgment granted in favor of Encompass Indemnity Company (Encompass). The district court determined Syfco's homeowner's policy with Encompass did not cover repair costs to Syfco's home which allegedly resulted from a broken drain pipe under a basement shower stall. We reverse and remand for further proceedings.

## I

In May 2011, Syfco and her mother, Dr. Susan Anderson, hired a contractor, Tim Morris, to complete a ceiling project in the kitchen of Syfco's home. Syfco had noticed a smell in the basement; when Morris arrived for the ceiling project he agreed to go downstairs to find the source of the smell. Morris pulled a cover on a basement floor drain and saw mold. He cut a hole in the floor to look for the source of the mold. He discovered the entire basement had a wood floor constructed on top of the original concrete floor. He also saw standing water had been collecting under the false floor, and believed the basement bathroom might be the source of the water.

Morris told Dr. Anderson she should immediately contact the homeowner's insurer, Encompass, before he proceeded with any additional work. Dr. Anderson contacted Encompass the same day and initiated a claim for water damage. It took nine days before an Encompass adjuster met with Dr. Anderson and Morris to inspect the basement. The adjustor authorized Morris to investigate and identify the source of the water damage on behalf of Encompass. After removing a substantial portion of the false floor to find the source of the standing water, Morris says he determined that each time someone used the shower in the basement bathroom, water leaked from a break in a two-inch drain pipe under the shower stall. Morris ultimately removed the rest of the false floor, cleaned the basement, removed portions of the walls, and constructed a new floor and partial walls. Morris completed his work in early June. The broken drain pipe identified as the source of the problem was lost when the dumpster containing debris from the basement was removed from the site sometime before June 10, 2011.

Those are, perhaps, all the facts pertinent to the limited coverage dispute now before us. A summary of some additional background facts may be helpful to understanding the procedural posture of this case, including claims between the parties not presently before us.

The facts surrounding the parties' communications between the time of the adjuster's initial inspection through the completion of the basement repairs and beyond are sharply disputed. From Syfco's point of view – as reported primarily by her mother, Dr. Anderson, and her contractor, Tim Morris – the record suggests Dr. Anderson was frantic about the urgent repairs needed to remedy the water damage, because the smell from the basement made the home uninhabitable and Syfco had to leave her home. Dr. Anderson says she was dealing with an uncooperative insurance company who stonewalled and ignored her at every turn, until her contractor was finally forced to complete the repairs before Dr. Anderson knew whether the damage would be covered by her daughter's policy.

From Encompass's point of view, the record suggests the insurer may have misinterpreted Dr. Anderson's sense of urgency for deception, a perception initially spurred by a legitimate but ultimately unfounded belief that Syfco may not have had an insurable interest in her home. Although the home was owned by Syfco, her mother had originally purchased the home, continued to pay the mortgage, and allegedly represented to Encompass that she owned the home. Encompass also asserted Dr. Anderson claimed to be her daughter in at least one phone call to the insurer while trying to get the coverage issue resolved before completing the repairs. Encompass further asserted Syfco and Dr. Anderson failed to cooperate by refusing to allow Encompass to inspect the home before the repairs were made. Although Encompass acknowledges it agreed to work with the customer's professional (Morris) to investigate the source of the water damage, it claims it also wanted a company called American Leak Detection to inspect the property to investigate the cause of loss, and that Dr. Anderson refused to answer American Leak's phone calls to schedule an inspection.

Dr. Anderson responds by claiming an inspection by American Leak was a "moot" point by the time Encompass said anything about a second professional getting involved, because she had been forced to complete the repairs to make the

home inhabitable and comply with the policy's duty to "[p]rotect the property from further damage [and] [m]ake reasonable and necessary repairs to protect the property." Communication between the parties was further strained by the fact Encompass sent its correspondence to Syfco at her home address, but Syfco did not receive the correspondence because she was not living in the uninhabitable home.

In August 2011, after both Syfco and Dr. Anderson had provided statements under oath as requested by Encompass, Encompass denied the water damage claim. Encompass denied the claim citing a policy exclusion and a cooperation clause. In relevant part, the exclusion stated Syfco's policy did not cover losses "[c]aused by continuous or repeated seepage over a period of weeks, months or years, of water . . . [f]rom within or around any plumbing fixtures, including but not limited to shower stalls[.]" In relevant part, the cooperation clause said Syfco had a duty to "[s]how the damaged property before its repair or disposal . . . [a]llow [Encompass] to take samples of damaged and undamaged property for inspection . . . [and] [c]ooperate with [Encompass] in the investigation or settlement of the claim."

Syfco filed suit against Encompass in state court alleging the water damage to her home was covered by her homeowner's policy, and Encompass breached the policy by refusing to pay for the repairs to her basement. Encompass removed the suit to federal district court based upon diversity jurisdiction, and then filed a motion for summary judgment. In its motion, Encompass relied upon the "seepage" exclusion it had initially cited when it first denied Syfco's claim. Encompass also relied upon an exclusion in the policy's additional coverage part for the remediation of biological irritants, contaminants, or spores (i.e., removal of mold). The exclusion in the additional coverage part provided the coverage did not apply if a loss was the result of "[c]ontinuous or repeated seepage or leakage of water or steam, which occurs over a period of weeks, months, or years from a plumbing . . . system[.]" Finally, Encompass relied upon the cooperation clause it had initially cited when it

first denied coverage, contending Syfco failed to cooperate in the investigation of the claim.

Syfco responded to the motion for summary judgment by arguing the policy distinguished between water damage caused by seepage and water damage caused by leakage. Although both forms of damage were excluded under the additional coverage for mold remediation, the policy's primary coverage only excluded damage caused by seepage. Syfco argued the water leaked rather than seeped from the broken drain pipe. With respect to the additional coverage part for the remediation of mold, Syfco averred she never made a claim for mold remediation under the additional coverage part, and was only claiming expenses associated with removing the old flooring and walls, and the construction of a new floor and walls. Syfco argued those expenses were covered under the policy's primary coverage, and the exclusion in the additional coverage part for mold remediation did not apply to an already covered claim.

The district court granted Encompass's motion for summary judgment. The district court concluded the damage was caused by water seeping from the broken drain pipe and therefore barred by the policy's seepage exclusion. The district court further determined the exclusion in the additional coverage part for mold remediation applied to bar all the expenses Syfco claimed. Having determined both policy exclusions applied to bar Syfco's claim, the district court did not address whether Syfco failed to comply with the policy's cooperation clause. Syfco filed a timely appeal.

II

We review the district court's grant of summary judgment de novo. Stein v. Chase Home Finance, LLC, 662 F.3d 976, 979 (8th Cir. 2011). Similarly, we review

the district court's interpretation of an insurance policy de novo. Macheca Transp. v. Phila. Indem. Ins. Co., 649 F.3d 661, 667 (8th Cir. 2011).

A

Syfco first contends the district court erred when it determined the policy's exclusion for a loss caused by "continuous or repeated seepage over a period of weeks, months or years, of water . . . [f]rom within or around any plumbing fixtures" barred her claim. Syfco argues the policy distinguished between "seepage" and "leakage" with only the former excluded. Syfco suggests "seepage" describes water going through an object, such as water that might seep through a porous substance, or ground water seeping through a basement floor. Syfco argues the term "seepage" does not encompass the water flowing from the broken pipe involved in this case (i.e., "a plumber who encounters a broken drain pipe would not tell his customer the pipe is 'seeping.' He would describe the broken pipe as 'leaking.'"). In support of her argument, Syfco notes Morris testified "the drain line that connects to the shower base had been cracked and water had been *leaking* out every time somebody had showered." Appellant's App. at 68 (emphasis added).

Under Minnesota law, the insured has the initial burden to establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995). Syfco met her burden in this case. The policy generally covered "direct physical loss to property" unless specifically excluded, and Encompass does not dispute the loss would be covered absent the applicability of an exclusion. Once the insured meets the burden of establishing a prima facie case of coverage, the burden shifts to the insurer to prove the applicability of an exclusion. Id. at 313. Exclusions in an insurance policy are construed strictly against the insurer. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 880 (Minn. 2002).

The policy used both the terms "seepage" and "leakage" to refer to damage caused by the flow of water. The use of these two different terms to describe the flow of water indicates they had different meanings. See Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 526 (Minn.1990) ("Because of the presumption that the parties intended the language used to have effect, we will attempt to avoid an interpretation of the contract that would render a provision meaningless."); see also St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc., 490 N.W.2d 626, 631 (Minn. Ct. App. 1992) ("In construing an insurance policy, as with any other contract, the court must give *all terms* used their plain, ordinary and popular meaning, so as to give effect to the parties' intention.") (emphasis added).

The policy did not define the terms "seepage" and "leakage," so the terms are given their ordinary meaning. Gopher Oil Co. v. Am. Hardware Mut. Ins. Co., 588 N.W.2d 756, 762 (Minn. Ct. App. 1999) ("[U]ndefined terms in a policy must be given their plain, ordinary, or popular meaning."). In addition, when "undefined terms are reasonably susceptible to more than one interpretation, the terms must be interpreted liberally in favor of finding coverage." Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (citing Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau, 679 N.W.2d 322, 329 (Minn. 2004)).

The ordinary meaning of the word "seepage" is "the act or process of seeping." Random House Webster's Coll. Dictionary 1187 (1999). "Seep," in turn, means "to pass, flow, or ooze gradually, as through a porous substance." Id. The ordinary meaning of the word "leakage" is "an act of leaking." Id. at 753. "Leak," in turn, means "an unintended hole, crack, or the like, through which liquid, gas, light, etc., enters or escapes." Id.

We agree with Syfco the ordinary meaning of "leakage" more aptly describes the manner in which water would have flowed through the crack in the broken drain pipe. Even if we did not agree, for summary judgment purposes the evidence must

be construed in the light most favorable to Syfco. <u>Country Life Ins. Co. v. Marks</u>, 592 F.3d 896, 898 (8th Cir. 2010). When viewed in that light, the water damage resulted from water leaking through a crack based on the testimony of the contractor Encompass authorized to investigate and identify the source of the water damage on its behalf. As a consequence, Encompass failed to satisfy its burden of proving the applicability of the policy's exclusion. The district court therefore erred when it determined as a matter of law that the water damage resulted from seepage.

B

Syfco next contends the district court erred when it found all of her repair costs were barred by the "seepage or leakage" exclusion in the additional coverage part for mold remediation. The district court determined the policy excluded coverage for the cost to repair or replace property damaged by mold or wet rot caused by the continuous or repeated seepage or leakage of water. This conclusion is not supported by the actual policy language.

The additional coverage part for mold remediation stated Encompass "will pay for *remediation* of biological irritants, contaminants or spores – including but not limited to, mold, fungus, wet rot, dry rot, or bacteria – that is a direct result of a covered peril." Remediation, in turn, was defined as "the reasonable and necessary treatment, removal or disposal of biological irritants, contaminants or spores – including but not limited to, mold, fungus, wet rot, dry rot, or bacteria – required to repair or replace property covered under [the primary policy]." The additional coverage for mold remediation did not cover the cost to repair or replace property damaged by mold – it only applied to the cost of removing the mold itself. Consequently, the exclusion in the additional coverage part for "seepage or leakage" could only apply to the cost of removing the mold. The exclusion could not bar the cost to repair or replace property otherwise covered under the primary policy. Instead, the policy expressly distinguished between the limited additional coverage

-8-

for the actual removal of the mold, and any repair or replacement costs that would follow after the mold was removed.

In this case, Syfco claimed expenses for the cost to repair or replace property separate and apart from the cost of removing the mold. The expenses Syfco claimed for the cost of removing the false floor, removing portions of the walls, and constructing a new floor and walls would not have been covered by the limited additional coverage for mold remediation to begin with, and thus could not be barred by an exclusion within that limited additional coverage. In fact, Syfco claims there was no "remediation" of the mold before Morris began repairing and replacing the damaged property. The record indicates, however, that Morris cleaned the basement (i.e., removed the mold) as part of the costs of restoring the basement. For purposes of this appeal, we need not decide whether some portion of the contractor's bill should be considered remediation of mold barred by the "seepage or leakage" exclusion in the additional coverage part – it is enough to decide that Syfco made a claim for some costs that were unaffected by the limited exclusion for "seepage or leakage" contained in the additional coverage for mold remediation. The district court therefore erred when it determined the "seepage or leakage" exclusion for mold remediation barred all of Syfco's claims.

III

We reverse and remand for further proceedings consistent with this opinion.[1]

_____

[1]Encompass did not ask us to affirm on the alternative ground that Syfco violated the policy's cooperation clause. We thus leave that issue to be decided in the first instance in the district court.