# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2792

_____

Restaurant Recycling, LLC,

*Plaintiff - Appellant*,

New Fashion Pork, LLP,

*Intervenor Plaintiff*,

v.

Employer Mutual Casualty Company, doing business as EMC Insurance
Companies; Hamilton Mutual Insurance Company,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 14, 2018
Filed: April 29, 2019

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

COLLOTON, Circuit Judge.

New Fashion Pork sued Restaurant Recycling for delivering defective
shipments of recycled fat, which New Fashion Pork uses as an ingredient in its swine

feed. Restaurant Recycling, in turn, sued Employer Mutual Casualty Company, seeking a declaratory judgment that the insurer had a duty to defend and indemnify Restaurant Recycling. Employer Mutual moved for judgment on the pleadings, citing a total pollution exclusion in its policy that limited coverage in the case of property damage arising from dispersal of pollutants. The district court[1] granted the motion, and Restaurant Recycling appeals. We conclude that the total pollution exclusion applies and affirm the judgment.

Disputes over an insurer's duty to defend are determined by reference to the complaint in the underlying action, so we recite the facts as alleged by New Fashion Pork. Restaurant Recycling purchases used fat products, like waste cooking oil from restaurants, and then processes and resells the substances to livestock producers for blending with other ingredients in their animal feed. From July to September 2014, Restaurant Recycling delivered several loads of its blended fats to New Fashion Pork. These fat products were contaminated with two substances—lasalocid and lascadoil. Lasalocid, a chemical agent, "is not generally recognized as safe and is known to cause deaths in horses, turkeys, and swine." Lascadoil, a byproduct in the manufacture of lasalocid, "is not approved for consumption in humans or in animals and is not generally recognized as safe." Lascadoil is an industrial waste product whose only approved use is as biofuel.

New Fashion Pork sued Restaurant Recycling in Minnesota state court, seeking reimbursement of its payment for the fat product and damages for the harm to its swine caused by the contaminated feed. The complaint alleged breach of contract, breach of implied warranties, negligence, strict liability, and fraud. New Fashion Pork asserted that consumption of the contaminated fat caused serious health issues for its swine, including that nursery pigs at several facilities "had difficulty starting

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

feeding and experienced measurably reduced feed consumption." Sows that consumed the contaminated fat "experienced feed refusal, irregular returns, and a reduced conception rate." And the feed allegedly caused an increase in the occurrence of nursery pigs dying suddenly.

Restaurant Recycling sought a declaratory judgment that Employer Mutual was obligated to defend and indemnify the company against New Fashion Pork's lawsuit. Employer Mutual acknowledged that it issued a commercial general liability policy to Restaurant Recycling, but claimed that the damages alleged by New Fashion Pork fell within the policy's total pollution exclusion. The district court agreed and granted Employer Mutual's motion for judgment on the pleadings. We review the district court's interpretation of the insurance policy *de novo* and apply Minnesota substantive law. *Thach v. Tiger Corp.*, 609 F.3d 955, 957 (8th Cir. 2010).

Under Minnesota law, we interpret insurance policies according to the general principles of contract law. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). "Provisions in an insurance policy are to be interpreted according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean." *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn. 1983) (internal quotation marks omitted). When interpreting pollution exclusions, Minnesota follows "a non-technical, plain-meaning approach." *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779 (Minn. Ct. App. 1999). An insured party bears the initial burden of demonstrating coverage, and the insurer then bears the burden of establishing an applicable exclusion. *Midwest Family*, 831 N.W.2d at 636. The duty to defend is broader than the duty to indemnify, and covers "those claims that arguably fall within the scope of the policy." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). In determining the scope of the duty, "a court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Id.* (emphases omitted).

Restaurant Recycling's policy provides that Employer Mutual has no duty to defend or indemnify in cases of "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." Restaurant Recycling concedes that lascadoil is a "pollutant" under the policy, but argues that the district court erred in concluding that lasalocid so qualifies.

We need not address the district court's rationale, because Restaurant Recycling's concession that lascadoil is a pollutant makes consideration of lasalocid's status unnecessary. Although the district court did not address whether lascadoil alone sufficed to trigger the pollution exclusion, Employer Mutual presented the argument below, and we may affirm on any ground raised in the district court. *Transcon. Ins. Co. v. W.G. Samuels Co.*, 370 F.3d 755, 758 (8th Cir. 2004).

New Fashion Pork alleged in its complaint that both lascadoil and lasalocid were "not generally recognized as safe," that lascadoil contains lasalocid, and that the fat product delivered by Restaurant Recycling was contaminated with both lasalocid and lascadoil. Each of the claims alleged that consumption of the contaminated fat caused damage to swine. The policy excludes property damage that "would not have occurred in whole or part but for" dispersal of a pollutant. Even if lasalocid were not a pollutant, the complaint did not allege that lasalocid *by itself* caused or would have caused *all* of the damage; to the contrary, New Fashion Pork alleged that both lasalocid and lascadoil were unsafe for consumption by animals, and that fat product contaminated with both substances caused serious health issues for its swine. (One count, alleging fraud, is based entirely on the undisclosed presence of lascadoil, the "industrial waste product.") The allegations that lascadoil caused some measure of damage suffice to place New Fashion Pork's claims within the pollution exclusion if the damage was caused by "dispersal" of the pollutant.

-4-

The policy does not define the term "dispersal," so under Minnesota's non-technical, plain-meaning approach to pollution exclusions, we use the ordinary meaning of "disperse"—*i.e.*, "to cause to break up and go in different ways" or "to cause to become spread widely." *Webster's Third New International Dictionary* 653 (2002); *see also The American Heritage Dictionary* 520 (5th ed. 2016) (defining "disperse" as "[t]o drive off or scatter in different directions" or "[t]o strew or distribute widely"); *The New Oxford American Dictionary* 492 (2001) (defining "dispersal" as "the action or process of distributing things or people over a wide area").

In its complaint, New Fashion Pork alleged that Restaurant Recycling "collects waste cooking oil" and "processes that waste oil into fat products" for use in animal feed. New Fashion Pork "blended" the contaminated fat into its feed and transported the feed to its swine facilities in Indiana and Illinois. These actions by Restaurant Recycling and New Fashion Pork qualify as "dispersing" the lascadoil, for they involve the breaking up and distributing of the lascadoil throughout the processed fat product and New Fashion Pork's swine feed.

Restaurant Recycling posits that dispersal must be an intentional act, and argues that the company never intended to spread lascadoil through its fat product deliveries. *See MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1215-18 (Cal. 2003). Restaurant Recycling argues that the "plain meaning" of dispersal implies intentionality. Failing that, the company also points to the fact that the policy covers only property damage caused by an "occurrence," which is defined as "an accident." The company argues that because an intentional act of dispersing pollutants would not be a covered accident or occurrence, the exclusion is logically limited to intentional acts.

We are not convinced by the plain-meaning argument. For one thing, the policy is phrased in the passive voice (excluding damage resulting from the "dispersal

-5-

. . . of 'pollutants'") and does not even specify that the insured must cause the "dispersal," intentionally or otherwise. The ordinary meaning of dispersal, moreover, is not limited to intentional acts. In *Hanson*, the Minnesota Court of Appeals concluded that the unintentional chipping of lead paint through opening and closing a window counted as dispersal. 588 N.W.2d at 781; *see also The New Oxford American Dictionary* 492 (2001) (noting that "storms can disperse seeds via high altitudes"). Likewise, the processing of the lascadoil into the fat product, and the blending of the fat product into the swine feed, constitutes a "dispersal" of lascadoil, even if Restaurant Recycling and New Fashion Pork were unaware of its presence.

That the insurance policy provides coverage for property damage caused by "occurrences," or accidents, does not mean logically that the exclusion is limited to intentional acts. Where a policy generally grants coverage for damage caused by accidents, the insurer naturally has reason to exclude certain types of accidents. Restaurant Recycling's interpretation, by contrast, would render the "dispersal" aspect of the exclusion superfluous. If the company is correct that an intentional act would never be a covered occurrence under the insurance policy, then there would be no need to exclude damages arising from intentional dispersals.

The judgment of the district court is affirmed.

_____