## United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1949

_____

C.S. McCrossan Inc.

*Plaintiff - Appellant*

v.

Federal Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 14, 2019
Filed: August 6, 2019

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

C.S. McCrossan Inc. sued Federal Insurance Company for coverage under a crime insurance policy. Both moved for summary judgment. The district court[1] granted the Company's motion. ***C.S. McCrossan Inc. v. Federal Ins. Co.***, 2018 WL

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

2180256 (D. Minn. Mar. 29, 2018). McCrossan appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The Company issued McCrossan an insurance policy for "Employee Theft" and "Forgery":

> (A) The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities**, or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.
>
> . . . .
>
> (D) The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

(bolded words in original, defined in policy). The policy excluded from coverage certain loss "committed by any authorized representative of an **Insured**." An Insured under the policy included McCrossan and its subsidiaries.

Blakeley Properties, LLC and Stewart Properties, LLC own commercial rental properties. Brookstone, Inc. and Valhalla Investments, Inc. were Blakeley's and Stewart's respective agents to "manage, operate, control, rent and lease" several properties.



Both hired Balderson Management, Inc. to manage these properties. Blakeley separately hired Balderson as well.

Balderson's owner and principal, Cynthia Balderson, managed properties with the help of an "administrative person," as relevant here, her daughter Stephanie Castillo. Castillo was the primary user of Balderson's property management system, the sole copy of which was on her computer. Unlike Cynthia, her duties (and authority) did not include signing checks from any accounts.

Castillo stole around $570,000 from Blakeley and $250,000 from Stewart over the course of several years. She created fake invoices in the property management system, printed checks (from Blakeley's and Stewart's accounts) payable to herself or for her benefit, manipulated the system to show payment to a vendor, and forged Cynthia's signature on each check. She pled guilty to eight counts of theft by swindle and was sentenced to 80 months' imprisonment. *State v. Stephanie Lantgen Castillo*, No. 27-CR-15-503 (Minn. Dist. Ct. Hennepin Cty. Nov. 23, 2015) (sentencing order).

McCrossan submitted a claim to the Company, seeking coverage under the "Forgery" and "Employee Theft" insuring clauses. The Company denied the claim. McCrossan sued for breach of the insurance policy. Both parties moved for summary judgment. The district court granted summary judgment to the Company. It concluded Stewart was not an Insured under the policy; Castillo was an authorized representative of Blakeley, precluding coverage under "Forgery;" and Castillo was not Blakeley's employee, precluding coverage under "Employee Theft." McCrossan appeals.

II.

This court reviews de novo "the district court's grant of summary judgment and its interpretation of state insurance law." *Grinnell Mut. Reinsurance Co. v.*

-3-

*Schwieger*, 685 F.3d 697, 700 (8th Cir. 2012). "The question is whether the record, viewed most favorably to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Volk v. Ace Am. Ins. Co.*, 748 F.3d 827, 828 (8th Cir. 2014).

In this diversity action, Minnesota substantive law controls this court's analysis of the insurance policy. *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017). This court is "bound by the decisions of the Minnesota Supreme Court" when interpreting Minnesota law. *Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008). "If the Minnesota Supreme Court has not spoken on a particular issue, [this court] must attempt to predict how the Minnesota Supreme Court would decide an issue and may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Id.*

"The interpretation of an insurance contract is a question of law." *Jerry's Enters.*, 845 F.3d at 887, *citing* *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). Minnesota courts use "general principles of contract law" to interpret an insurance policy. *Midwest Family*, 831 N.W.2d at 636, *citing* *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002). The policy "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Id.*, *quoting* *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986). "Provisions in an insurance policy are to be interpreted according to both 'plain, ordinary sense' and 'what a reasonable person in the position of the insured would have understood the words to mean.'" *Id.*, *quoting* *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn. 1983). Exclusions are "construed strictly against the insurer." *Syfco v. Encompass Indem. Co.*, 761 F.3d 867, 871–72 (8th Cir. 2014), *citing* *Thommes*, 641 N.W.2d at 880. "An insured party bears the initial burden of demonstrating coverage, and the insurer then bears the burden of establishing an applicable exclusion."

-4-

***Restaurant Recycling, LLC v. Employer Mut. Cas. Co.***, 922 F.3d 414, 417 (8th Cir. 2019), *citing **Midwest Family***, 831 N.W.2d at 636.

A.

McCrossan seeks recovery for Blakeley's and Stewart's losses. The policy covers loss to an Insured. The Company admits Blakeley is an Insured.

Stewart, however, is not. An Insured includes McCrossan and "any **Subsidiary**." Subsidiary is defined in the policy, as, in relevant part:

> any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**.

While the policy was in effect, Stewart was wholly-owned by a McCrossan individual. Without citing authority, McCrossan argues Stewart is an Insured because it was not in a "materially different position" than other McCrossan-related entities the Company admits are covered. The policy's language calls for ownership or control by McCrossan. Ownership and common management by McCrossan individuals, even McCrossan board members, does not meet this test. Because Stewart does not meet the policy's definition of Subsidiary, it is not an Insured. *See **Depositors Ins. Co. v. Dollansky***, 919 N.W.2d 684, 691 (Minn. 2018) ("We determine whether an insurance policy provides coverage by looking to the language of the insurance policy itself."). The district court properly granted summary judgment to the Company on McCrossan's claims for Stewart's loss.

B.

As for Blakeley's loss, McCrossan claims coverage under the "Forgery" and "Employee Theft" insuring clauses.

The Company admits McCrossan met its initial burden to demonstrate coverage under the "Forgery" clause. The Company argues, however, that the "Authorized Representative" exclusion applies, which excludes from coverage:

> loss or damage due to **Theft**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud**, **Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion (A)(14) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

The parties dispute whether Castillo was an "authorized representative" of Blakeley, a term not defined in the policy.

The most relevant case is *National City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171 (Minn. 1989). There, an insured bank sought coverage under a bond after making a loan in reliance on fake stock certificates. *Id.* at 173. At issue was whether the insured bank complied with the bond's requirement that "the Insured, its correspondent bank or other authorized representative" physically possess the certificates before making the loan. *Id.* at 174. The insured bank received the certificates after making the loan; another bank had them while the insured bank negotiated it. *Id.* The court concluded the lack of agency relationship precluded the other bank from being an "authorized representative" of the insured bank under the bond. *See id.* at 176. "It was a mere coincidence" that the other bank

-6-

had the certificates while the insured bank negotiated the loan. *Id.* "[T]hus there was no act making [the other bank] an 'authorized representative' of [the insured bank]." *Id.* (agreeing with the trial court that the other, possessing bank "did not serve as an authorized representative of [the insured bank] in this transaction for the purposes of possessing the certificates as contemplated under the [b]ond").

This court is bound by the Minnesota Supreme Court's instruction that "being an 'authorized representative' has an agency requirement." *Id.* Here, it is undisputed that Blakeley made Balderson its agent for property management, Blakeley knew Castillo worked at Balderson on its accounts, and Blakeley did not object to her working there. The district court thus correctly applied agency principles to conclude that Castillo met *National Bank*'s agency requirement. *See* **Semingson v. Stockyards Natl. Bank**, 203 N.W. 412, 413 (Minn. 1925) ("If an agent employs a subagent for his principal, by authority of the principal, express or implied, the subagent is the agent of the principal."); **Hartford Fire Ins. Co. v. Clark**, 727 F. Supp. 2d 765, 775 (D. Minn. 2010), *quoting* **Restatement (Third) Of Agency** § 3.15 cmt. c (2006) ("Implied consent to appoint subagents is . . . present when an agent is itself a person that is not an individual, such as a corporation."), *and* § 3.15 cmt. b ("When an agent is itself a corporation or other legal person, its officers, employees, partners, or members who are designated to work on the principal's account are subagents."). *Cf.* **Wolfson v. Beris**, 295 N.W.2d 562, 565 (Minn. 1980) (trial court correctly applied agency principles to find that real estate agent was subagent of seller, even though seller did not "know of" or "authorize" agent's actions, because agent "acted on [the seller's] part in accord with the custom of the industry"), *citing* **Restatement (Second) of Agency** § 5(1) (1958).

True, as McCrossan contends, *National City* does not say that agency is the only requirement to be an authorized representative. However, the authorized representative exclusion unambiguously applies here, where Blakeley's

-7-

empowerment of Castillo to act on its behalf enabled her crime.[2] *See BancInsure, Inc. v. Highland Bank*, 2012 WL 6217375, at *6–7 (D. Minn. Dec. 4, 2012) (concluding that one bank was the "authorized representative" of another bank because their "intentional relationship" met *National City*'s agency requirement). *See also Volk*, 748 F.3d at 828–29 ("Minnesota courts rely on dictionaries for the plain and ordinary meaning of an undefined term."); *Stop & Shop Cos., Inc. v. Federal Ins. Co.*, 136 F.3d 71, 74 (1st Cir. 1998) (consulting Black's Law Dictionary and Webster's Third New International Dictionary to conclude "authorized representative" unambiguously covers "a person or company empowered to act on an entity's behalf"); *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 850 F.3d 866, 871 (7th Cir. 2017) (adopting *Stop & Shop*'s definition); *Stanford Univ. Hosp. v. Federal Ins. Co.*, 174 F.3d 1077, 1085 (9th Cir. 1999) (construing "the 'authorized representative' language . . . narrowly since it is in an exclusion clause" and agreeing with *Stop & Shop*).

Blakeley authorized Balderson to act on its behalf for property management. Balderson's duties included managing bank accounts, all accounting (rental billing, deposits, distributions, and disbursements), approving invoices, and maintaining property management software. (The scope of the duties Blakeley granted Balderson and reserved for itself is detailed by the district court. *C.S. McCrossan*, 2018 WL 2180256, at *3–4.) Blakeley knew that Balderson performed its duties through Cynthia and Castillo. *See Rommel v. New Brunswick Fire Ins. Co.*, 8 N.W.2d 28, 32 (Minn. 1943) ("[A corporation] must act through or by means of human direction."). Blakeley's grant of authority to Balderson thus empowered them to

---

[2]McCrossan argues that equating "authorized representative" with "agent" is inconsistent with other provisions in the insurance policy. It does not object to defining "authorized representative" to cover "a person or company empowered to act on an entity's behalf." This court need not address whether McCrossan's proposed definition requiring "authority to bind" is reasonable, making "authorized representative" ambiguous. McCrossan itself does not view the formulations "as meaningful[ly] different."

work on its behalf. *See **Stanford Univ.***, 174 F.3d at 1085 ("There would be no force or effect to the exclusionary clause if the term 'authorized representative' did not include employees and officers of the authorized company."); ***Stop & Shop***, 136 F.3d at 74–75 (noting an authorized company "may carry out its obligations . . . only through the acts of its officers and employees," and rejecting that acts by the authorized company's officers could not fall under an "authorized representative" exclusion).

Not every individual working for an authorized representative is also an authorized representative. The facts of each case determine whether the individual is empowered to act on the principal's behalf. Contrary to McCrossan's argument that Castillo lacked authority, her (undisputed) duties—done on behalf of Blakeley—included: bookkeeping (including processing invoices and printing checks), inputting vendor information, collecting rents, following up on property-rental leads, making cold calls, and handling tenant requests. The sole copy of the property management system—necessary to Castillo's scheme—was on her computer, and Cynthia rarely accessed it. Cynthia testified that she planned to have Castillo take over Balderson once she retired, and, in connection with that, Castillo was getting more involved in tenant issues. Jane McCrossan, Blakeley's manager, testified that she knew and was not surprised that independent auditors decided to interview Castillo about fraud as a standard part of two of McCrossan's annual audits. Though Castillo's position was an "administrative person," McCrossan swore in its proof of loss that "Castillo was responsible for co-managing the McCrossan Subsidiaries' properties and leasing those properties out." Castillo's role at Balderson authorized her to conduct the activities that led to her crimes, thus the authorized representative exclusion applies. *See **Colson Servs. Corp. v. Insurance Co. of N. Am.***, 874 F. Supp. 65, 69 (S.D.N.Y. 1994) (concluding company was plaintiff's authorized representative where it was given authority to act as plaintiff's agent in choosing investments and plaintiff "could have chosen to monitor [it] more closely to ensure that it was exercising its authority appropriately, but chose not to do so"). *Cf. **Telamon***, 850 F.3d at 871 (consultant was corporation's authorized

representative where, despite a lack of express authorization in her employment agreements "to do the *specific* activity that gave rise to the theft," her "actual role grew over time to reach matters far beyond the [a]greements' terms," and her duties authorized her "to conduct the very activity that led to her crime").

In light of these facts, Castillo's lack of check-signing authority does not preclude her from being an "authorized representative," as McCrossan argues. The term's unambiguous meaning does not impose such a requirement. *See Storms, Inc. v. Mathy Const. Co.*, 883 N.W.2d 772, 776 (Minn. 2016) ("When a contractual provision is unambiguous, we do not 'rewrite, modify, or limit its effect by a strained construction.'"), *quoting Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364–65 (Minn. 2009). Nor does the exclusion's plain language. As the district court noted, it reaches a range of acts unconnected to check-signing authority. The exclusion applies to acts committed by "any authorized representative," not just authorized representatives with authority to sign checks. *See Kubota Credit Corp., U.S.A. v. Federal Ins. Co.*, 2012 WL 12033876, at *5–7 (C.D. Cal. Apr. 2, 2012) (construing the same exclusion at issue here, noting "the plain meaning of 'authorized representative[]' . . . only requires a grant of 'authority,' not necessarily a grant of 'fiscal authority'").

While exclusions are construed narrowly against the insurer, viewing the record most favorably to McCrossan, the authorized representative exclusion unambiguously excludes coverage here because Castillo acted as Blakeley's authorized representative. *See Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 921 (Minn. 2011) (Courts "must fastidiously guard against the invitation to create ambiguities where none exist."), *quoting Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn. 1979).

As for coverage under "Employee Theft," McCrossan argues that if Castillo was Blakeley's authorized representative, she must have been its employee. As

relevant here, an "Employee" means any "Contractual Independent Contractor." The policy defines that term as:

> any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, pursuant to a written contract between such **Organization**, and either (A) such natural person independent contractor, or (B) any other entity acting on behalf of such natural person independent contractor, for services.

McCrossan/Blakeley did not have a written contract for services with Castillo. Blakeley did have a contract with Balderson. Viewing the record most favorably to McCrossan, Balderson was not acting on behalf of Castillo.

The parties agree that acting "on behalf of" means "in the interest of," "as the representative of," or "for the benefit of." *Harleysville Ins. Co. v. Physical Distrib. Servs., Inc.*, 716 F.3d 451, 460 (8th Cir. 2013), *quoting* **Webster's Third New International Dictionary** 198 (1993). McCrossan argues Balderson acted for the benefit of Castillo, relying solely on *Colony Tire Corp. v. Federal Ins. Co.*, 217 F. Supp. 3d 860 (E.D.N.C. 2016). There, a plaintiff sought coverage under the same employee-theft clause at issue here after two alleged "contractual independent contractors" fraudulently used their payroll-and-tax-services corporation to embezzle the plaintiff's funds. *See **Colony Tire**, 217 F. Supp. 3d at 863, 866. Analyzing the same language at issue here in light of North Carolina law, that court concluded the corporation acted on behalf of its two owners "when it contracted with plaintiff for the purpose of facilitating the [owners'] embezzlement." ***Id.*** at 867. The court noted "the purpose of [the corporation's] existence was to facilitate the [owners'] embezzlement," and "there is no evidence in the record that anyone benefitted from [its] operations other than the [owners]." ***Id.*** *Colony Tire* is inapposite here. First, Balderson's contractual relationship with Blakeley started before Castillo joined Balderson. Though she worked there when Blakeley hired Balderson directly, that contract was recommended when the companies' relationship started (again, before

-11-

she joined Balderson). Second, Cynthia owned Balderson, not Castillo, and the purpose of its existence was not to facilitate Castillo's crime.

Still relying on *Colony Tire*, McCrossan calls it an "absurd result" that Castillo's actions are not covered—despite McCrossan not giving her authority to sign checks—while a crime committed by Cynthia—an authorized signer—would be covered as employee theft. Analyzing Cynthia's acts under *Colony Tire* presents different facts and law than present here. Castillo's acts are not covered by the plain and ordinary meaning of the insurance policy here. *See **Engineering & Const. Innovations, Inc. v. L.H. Bolduc Co.***, 825 N.W.2d 695, 705 (Minn. 2013) ("[W]e will not 'read an ambiguity into the plain language of a policy in order to provide coverage.'"), *quoting **Farkas v. Hartford Accident & Indem. Co.***, 173 N.W.2d 21, 24 (Minn. 1969).

The district court properly granted the Company summary judgment on McCrossan's claims for Blakeley's loss.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-12-