# Supreme Court of Texas

No. 23-0789

Westlake Chemical Corporation,

*Petitioner,*

v.

Berkley Regional Insurance Company and Zurich American
Insurance Company,

*Respondents*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE BOYD, concurring in the denial of rehearing.

Westlake Chemical Corporation contracted with Tinkle Management Inc. (TMI) to provide shipping bags and other supplies used to package Westlake's products for export at another contractor's warehouses. Westlake "outsourced" to TMI's owner, John Tinkle, the responsibility of monitoring the inventory of supplies TMI provided, determining when each warehouse needed additional amounts and types of supplies, and providing those supplies when required. Tinkle took advantage of this authority and sent emails to Westlake with fraudulent invoices requesting payments for supplies Westlake never

needed and TMI never provided. Westlake sustained over $16 million in losses by paying these invoices. After Westlake discovered the scheme, Tinkle pleaded guilty to fraud and money-laundering charges and was sentenced to forty-eight months in prison.

Westlake submitted claims to recover the losses under an insurance policy it purchased from Berkley Regional Insurance Company and an excess policy it purchased from Zurich American Insurance Company. The policies provided coverage for losses caused by computer fraud, but excluded coverage for such losses "resulting from 'theft' or any other dishonest act committed by" Westlake's "authorized representatives." The policies did not define "authorized representatives."

The trial court granted summary judgment for the insurers, concluding Westlake's losses were not caused by computer fraud and, even if they were, they resulted from dishonest acts by Westlake's authorized representative. The court of appeals affirmed. Without reaching the computer-fraud issue, the court agreed that Tinkle was Westlake's authorized representative—a phrase the court construed to unambiguously mean anyone "who has permission to speak or act for another, or . . . to act on another's behalf." 2023 WL 3634322, at *6–8 (Tex. App.—Houston [1st Dist.] 2023). The court rejected as unreasonable Westlake's proposed construction of "authorized representative" to mean one who acts as a legal "agent," having authority to represent the principal to others on the principal's behalf.

Like all contracts, an insurance policy is ambiguous if, "after applying the pertinent rules of contract interpretation," its language is

2

susceptible to two or more reasonable interpretations. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). But unlike most other contracts, courts must construe an ambiguous insurance policy in the insured's favor, even if the insurer's proposed construction "appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI*, 466 S.W.3d at 118 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

The court of appeals relied on dictionary definitions of "authorized representative" to conclude it means "someone who has permission to speak *or act* for another, or someone who is empowered *to act* on another's behalf." 2023 WL 3634322, at *5–6 (emphases added). In light of this "ordinary" meaning, the court concluded that Westlake's proposed meaning, which imports a more technical, legal-agency requirement into the definition, is unreasonable. *Id.* at *6–7. And because Westlake concedes that Tinkle was authorized to "act"—that is, to manage inventory and fulfill orders—on Westlake's behalf, the court agreed with the trial court that the policy's exclusion applies. *Id.* at *8.

I'm not convinced that Westlake's proposed construction is unreasonable in light of the policy's language and the context in which it is used. Regarding the context, the exclusion eliminates coverage when a computer-fraud loss results from dishonest acts by the insured's "'employees,' 'managers,' directors, trustees *or* authorized representatives" (emphasis added). The phrase "authorized representatives" thus appears as the last item within a list of other positions that reflect a direct relationship with the company, pursuant

3

to which the person is empowered to act as the company itself. Under the *ejusdem generis* construction canon, which prevents general words from enlarging preceding specific terms, and the *noscitur a sociis* canon, which requires a term to be interpreted "by its associates," the phrase "authorized representative" may reasonably be construed to refer only to the same type of position. *See Cleveland v. United States*, 329 U.S. 14, 18 (1946); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 (Tex. 2006). Under this construction, "authorized representative" is not simply an umbrella, catch-all phrase encompassing every contractor, vendor, supplier, delivery service, or other person who does *any*thing on the company's behalf.

For this reason (among others), courts in other jurisdictions have construed the phrase "authorized representative," as used in this context, to refer to one who interacts with third parties as the legal agent of a principal. *See Nat'l City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 176 (Minn. 1989) ("[B]eing an 'authorized representative' has an agency requirement.").[1] To determine the meaning of undefined terms in an insurance policy, we must consider not only dictionary definitions, but also the term's "usage in

---

[1] *See also C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1146 (8th Cir. 2019) (agreeing with and applying *Nat'l City Bank*); *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083–84 (9th Cir. 1999) (holding wrongdoer was an authorized representative because it had authority to submit tax records on the insureds' behalf and "to possess and disburse the funds" of the insureds); *Colson Servs. Corp. v. Ins. Co. of N. Am.*, 874 F. Supp. 65, 67–68 (S.D.N.Y. 1994) (holding wrongdoer was an authorized representative because it had authority "to act as [the insured's] agent in choosing which investments to make each day with the money held in [the insured's a]ccount").

4

other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). These decisions from other jurisdictions support the reasonableness of Westlake's proposed construction.

But most importantly, an "authorized *representative*" cannot include every person who is authorized to "act" on the insured's behalf, as the court of appeals concluded; the person must actually "represent" the insured in some interaction with someone else. And the loss must result from a dishonest act that the person performs in that "representative" capacity. Here, all parties agree that Westlake authorized Tinkle to monitor its inventory, deliver additional bags and supplies to the warehouses, and submit invoices to Westlake, but he had no authority to make payments, to control Westlake's funds, or to "represent" Westlake to others. As Westlake asserts, Tinkle thus had authority to act "for" Westlake's benefit, but not to "represent" Westlake or act "on" its behalf.

I am thus inclined to agree with Westlake that its proposed construction of the policy's exclusion is reasonable. But I join the Court's decision to deny Westlake's rehearing motion because I agree with the trial court's conclusion that Westlake's losses do not fall within the policy's computer-fraud coverage. The computer-fraud clause provides coverage "for loss of or damage to 'money', 'securities' and 'other property' resulting *directly* from the use of any computer to fraudulently cause a transfer of that property" (emphasis added). Westlake contends the policies cover its losses because Tinkle submitted TMI's invoices to Westlake *by email*, and thus caused the payments by "the use of [a]

5

computer." But the losses did not "result *directly*" from Tinkle's use of a computer: no evidence suggests that Westlake would not have suffered the same losses if Tinkle had submitted the invoices by mail or by hand-delivery. Like the Fifth Circuit, I agree that the policy's computer-fraud coverage does not apply when the use of email is "merely incidental to the occurrence of the authorized transfer of money." *Apache Corp. v. Great Am. Ins. Co.*, 662 Fed. Appx. 252, 258 (5th Cir. 2016) ("To interpret the computer-fraud provision as reaching any fraudulent scheme in which an email communication was part of the process would . . . convert the computer-fraud provision to one for general fraud.") (interpreting and applying Texas law).

For these reasons, I join the Court's decision to deny Westlake's rehearing motion. But the denial does not constitute approval of the court of appeals' construction of the phrase "authorized representatives" as used in the policy's dishonest-acts exclusion. That issue remains one of first impression in this Court.

Jeffrey S. Boyd
Justice

**OPINION FILED:** November 15, 2024

6